

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2007

# Poulos v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket No. 05-4637

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Poulos v. Comm Social Security" (2007). *2007 Decisions.* Paper 1701.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1701

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4637
_____

ARTHUR POULOS,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-2250)
District Judge: Anne E. Thompson
_____

Argued:  September 14, 2006

Before:  FUENTES, FISHER and McKAY,[*] *Circuit Judges*.

(Filed January 24, 2007)

Thomas H. Klein, Esq. (argued)
Smith & Klein
100 Broad Street
Eatontown, New Jersey 07724

    *Counsel for Appellant*

Christopher J. Christie

_____

[*]

The Honorable Monroe G. McKay, United States Circuit
Judge for the Tenth Circuit, sitting by designation.

United States Attorney
Sixtina Fernandez (argued)
Special Assistant U.S. Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278

Barbara L. Spivak
Chief Counsel – Region II
Stephen P. Conte
Supervisory Regional Counsel
Office of the General Counsel
Social Security Administration

*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

McKAY, *Circuit Judge*.

Appellant is 5' 6" tall and weighs over 450 pounds.[1]
On February 3, 2000, Appellant, then nineteen years old,
applied for Child's Insurance Benefits and Supplemental
Security Income payments, alleging disability from birth
based on morbid obesity with resultant knee pain, back strain,
shortness of breath, and slowed movement; neurological
impairment; and chronic ear infections. (R. at 106.) Upon
reconsideration, he also alleged that he had severe
hypertension. (R. at 115.) The Social Security
Administration denied Appellant's initial application as well

---

[1] In November 2000, a physician noted that Appellant's last
recorded weight, taken one year prior, was 450 pounds and
that Appellant had "increased his abdominal girth
subsequently." (R. at 297.) The physician did not have the
equipment to weigh someone of Appellant's size. (R. at 297.)
On September 7, 2001, a different physician estimated
Appellant's weight at 500 pounds. (R. at 296.)

as his request for reconsideration. After a hearing, an Administrative Law Judge ("ALJ") concluded that Appellant had not been disabled at any time since his alleged disability onset date. The Appeals Council denied Appellant's request for review of that decision. Appellant then filed the instant action with the District Court, which affirmed the decision of the Commissioner. For the reasons that follow, we will reverse and remand for further proceedings in accordance with this opinion.

## BACKGROUND

The record indicates that Appellant has been obese his entire life. In March 1986, at the age of five, he weighed 140 ½ pounds. (R. at 176.) Three years later, at the age of eight, he weighed 246 pounds. (R. at 307.) By May 2000, Appellant weighed more than 450 pounds. (R. at 213.) A person with a Body Mass Index (BMI) of 30.0 or higher is characterized as obese. SSR 02-1p. A person with a BMI greater than or equal to 40.0 is characterized as extremely obese and is considered to be at the greatest risk for developing obesity-related impairments. *Id.* At a height of 5'6" and an estimated weight of 500 pounds (R. at 296), Appellant has an estimated BMI of 80.7.

At the hearing before the ALJ, Appellant testified that his obesity and other health problems cause him to move slowly, to have difficulty walking and standing for long periods, to have great difficulty climbing stairs, and to have trouble sleeping at night. Appellant testified that he does not move as quickly as other people, even when sitting. (R. at 36-37.) He stated that after walking for one or two blocks, his legs start to hurt and he is out of breath. (R. at 39, 117.) When he stands for more than ten minutes, his right knee "starts to really hurt [and] cramp up with sharp pain." (R. at 39.) After an hour of standing, his ankles start to swell, and they will typically remain swollen for two days. (R. at 39.) Appellant testified that he must climb stairs one step at a time and is "all out of breath" by the time he reaches the top. (R. at 34.) He also has difficulty sleeping through the night, waking up every hour or two because he is unable to breathe

3

and must sit up to catch his breath. (R. at 43.) This disruption in sleep causes him to feel tired throughout the day. (R. at 43.)

Appellant testified at the hearing that he does not have problems sitting, although he occasionally gets mild pain in his hip if he sits too long. (R. at 39.) Appellant later testified, however, that his lower back starts to hurt when he is sitting. (R. at 42.) Appellant also testified that he sometimes gets out of breath just sitting (R. at 40), and that he has to lie down to rest during the day in order to help catch his breath and rest his body (R. at 41). Additionally, Appellant elsewhere asserted that his weight causes him to break chairs while he is sitting in them. (R. at 125.)

The record reflects that Appellant suffers from some physical health problems. Appellant has had hypertension since at least 1995 (R. at 227), although it has generally been controlled by medication (R. at 296). A pulmonary function study showed some mild obstructive and restrictive defect. (R. at 203.) Appellant has consulted a physician numerous times for earaches (R. at 227-35, 237, 240, 243, 246-49, 254-55), and apparently underwent a tonsillectomy and an unsuccessful ear tube implantation in 1987 (R. at 110; 143). A state agency physician who examined Appellant in September 2000 diagnosed him with morbid obesity, hypertension, and right knee pain due to meniscal degeneration. (R. at 57.) The medical evidence was reviewed by a second state agency physician, who concluded that Appellant could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (R. at 261.)

The record also reflects that Appellant may suffer from a neurological impairment. Appellant was classified as pre-school handicapped at the age of 3 (R. at 168) and as neurologically impaired at the age of six (R. at 165). Although he graduated from high school, Appellant was enrolled in some resource classes. (R. at 34.) A psychologist employed by the New Jersey Department of Labor tested

4

Appellant and determined that he had a full scale I.Q. of ninety-eight, which is in the average range. (R. at 257.) The psychologist stated, however, that the twenty-four-point discrepancy between his verbal and his performance I.Q. was "highly significant and consistent with neurological impairment." (R. at 257.) The psychologist further stated that Appellant "ha[d] severe deficits in perceptual organization on block design and also show[ed] problems with sustained attention and motor persistence." (R. at 257.) The psychologist described Appellant as "very prompt, cooperative and pleasant about being tested." (R. at 256.) A state agency psychologist who reviewed the medical evidence concluded that Appellant had a neurological impairment, but that this impairment was not severe. (R. at 281.) This psychologist determined that Appellant only suffered from a mild limitation in maintaining concentration, persistence, or pace. (R. at 291.)

Appellant is able to engage in a variety of different activities. He can use the computer, build and paint small statues, read history books, and watch television. (R. at 38.) He prepares his own breakfast and lunch (R. at 142), and he babysits his niece while his sister is at work (R. at 38). He is able to drive, although he cannot fit into certain cars (R. at 33-34), and he occasionally visits friends (R. at 142).

Appellant has never been employed longer than a few months. He worked as a kitchen assistant for a few months in 1998 as part of a high school vocational program, as a night stock person for a few weeks in June 1999, and as a baker's assistant for a few weeks in July 1999. (R. at 162.) Appellant testified that he cannot keep a job because he is too slow. (R. at 35-36.) He also asserted that he stopped working because his back and legs hurt and he was "physically unable to do the work required." (R. at 106.) His mother believes that he cannot work because he is just "too big at this time to function." (R. at 52.) Appellant has a high school education and was twenty-one years old at the time of the hearing before the ALJ. (R. at 34.)

## DISCUSSION

5

Because the Appeals Council denied review of the ALJ's decision, we review that decision as the final decision of the Commissioner. *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). We review the ALJ's application of the law de novo, *see Mounsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986), and review the ALJ's factual findings for substantial evidence, *see* 42 U.S.C. 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

The Social Security Administration has promulgated a five-step process to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner must determine whether the claimant has engaged in substantial gainful activity since his alleged disability onset date. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner next determines whether the claimant has an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner considers whether the impairment meets the criteria of an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, the Commissioner proceeds to step four. *Id.* §§ 404.1520(d), 416.920(d). In step four, the Commissioner determines whether, despite the severe impairment, the claimant retains the residual functional capacity to perform his past relevant work. *Id.* §§ 404.1520(e), (f), 416.920(e), (f). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. *Id.* at 551.

In the instant case, the ALJ first determined that Appellant's prior work attempts were too brief to constitute "substantial gainful activity," and thus that a finding of disability was not precluded. (R. at 18.) In step two, the ALJ found that Appellant's "combination of obesity, hypertension

and right knee medial meniscus damage has been 'severe,' under the regulatory definition of the term, since at least 1995." (R. at 20.) However, the ALJ concluded that Appellant's EKG abnormalities, pulmonary disease, ear infections, upper respiratory infections, spinal abnormalities and neurological impairment were not severe. (R. at 26.) In step three, the ALJ held that Appellant had no impairment or combination of impairments meeting the criteria of any of the Listings. (R. at 26.) In step four, the ALJ determined that Appellant's past work could not be considered relevant because he had never worked long enough to master any occupation. (R. at 26.)

After moving through the first four steps of the process, the ALJ concluded at step five that Appellant was not disabled. Using the Medical-Vocational Guidelines from 20 C.F.R. part 404, subpart P, Appendix 2 (the "Guidelines"), the ALJ determined that Appellant's maximum sustained exertional capability with respect to lifting and carrying was for medium work. (R. at 25.) However, the ALJ determined that Appellant's occupational base was "markedly eroded by his limitation on standing, walking, and stooping." (R. at 25.) Therefore, the ALJ found a maximum sustained exertional capacity for sedentary work. (R. at 25.) Based on this exertional capability, as well as on Appellant's age, education, and lack of relevant work experience, the ALJ, applying Medical-Vocational Rule 201.27 "as a framework for decisionmaking," found that Appellant was not disabled. (R. at 27.)

On appeal, Appellant argues that the ALJ erred at three steps of the process: in step two, the ALJ erred by concluding that Appellant's neurological impairment was not severe; in step three, the ALJ erred by failing to find Appellant's combination of impairments equivalent to one of the listed impairments; and in step five, the ALJ erred by relying on the Guidelines to find that Appellant was not disabled. For the reasons discussed below, we conclude that the ALJ properly conducted steps two and three of the process, but that he erred in step five by relying on the Guidelines in the presence of Appellant's nonexertional limitations.

7

In step two, the ALJ found that Appellant's alleged mental impairment was not severe because "[a]ny limitations on [Appellant's] activities of daily living and social functioning are not attributable to mental/neurological impairment, considering the wide range of activities in which he engage[s] and his pleasant, cooperative behavior."  (R. at 25.)  Appellant argues that the ALJ's finding was erroneous because Appellant has severe deficits in perceptual organization and problems with sustained attention and motor skills.

We agree with the district court that the ALJ's step two finding is supported by substantial evidence.  While a psychologist did indicate that the twenty-four-point difference between Appellant's verbal I.Q. and performance I.Q. is consistent with neurological impairment, Appellant's full-scale I.Q. of ninety-eight is solidly within the average range.  The state agency psychologist who reviewed the medical evidence concluded that Appellant has only a mild impairment in concentration and that his mental impairment is not severe within the meaning of the Social Security Act.[2]  As the ALJ noted, Appellant "graduated from high school without significant repetition of grades and with minimal academic support," and he "is able to work on a computer recreationally, to follow programs on the history channel, to write legibly and to communicate orally in an insightful way."  (R. at 25.)  After reviewing the record, we conclude that this substantial evidence supports the ALJ's finding that Appellant's neurological impairment is not severe.

Appellant asserts that the ALJ did not properly consider whether Appellant's combination of impairments was equivalent to one of the Listings and did not properly evaluate the effect of obesity on Appellant's other

---

[2]  State agency physicians and psychologists are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings as opinion evidence.  20 C.F.R. §§ 404.1527(f), 416.927(f).

impairments.  Appellant also argues that the ALJ "apparently misunderstood the medical evidence and severity of [Appellant's] conditions."  (Appellant's Br. at 20.)  Appellant argues, citing to *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112 (3d Cir. 2000), that the ALJ's failure to fully discuss and apply the Listings in step three is clear error.  We note that Appellant does not argue that the ALJ should have applied a different Listing, nor does he point to specific evidence ignored by the ALJ that would indicate that Appellant's impairments are equivalent to one of the Listings the ALJ identified.  The only Listing Appellant points to is former Listing 9.09 on Obesity, which had been rescinded before Appellant filed his claim.

An ALJ must provide a sufficient framework of reasoning for a court to conduct "meaningful judicial review" of the ALJ's decision.  *Burnett*, 220 F.3d at 119.  In *Burnett*, the ALJ only set forth a conclusion that the claimant's impairment did not meet the level of severity of any of the listed impairments.  Here, in contrast, the ALJ issued the step three finding only after reviewing all of the objective medical evidence, including evidence of Appellant's obesity, and explicitly stating which Listings he was considering.  We conclude that this analysis satisfies the requirements of *Burnett*.  Furthermore, after reviewing the record, we conclude that the ALJ's step three decision is supported by substantial evidence.

Appellant asserts that the ALJ erred in step five by using the Guidelines to find that Appellant was not disabled.  Although the ALJ determined that Appellant had both exertional and nonexertional limitations,[3] the ALJ

---

[3]  The Social Security regulations state that the limitations and restrictions imposed by a claimant's impairments and related symptoms may be exertional, nonexertional, or a combination of both.  20 C.F.R. § 404.1569a.  Exertional limitations relate to the strength demands of jobs, in terms of sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id.*  All other limitations affecting the claimant's ability to meet the

subsequently concluded, without reference to any vocational evidence, that Appellant's exertional and nonexertional limitations did not "significantly compromise[]" the sedentary occupational base, and thus that the Guidelines could be applied to deny Appellant's claim. (R. at 27.) We agree with Appellant that the ALJ erred in so doing.

The ALJ's reliance on the Guidelines in the presence of Appellant's nonexertional limitations constitutes reversible error under *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000). In *Sykes*, the Social Security Administration made the same argument that it makes on appeal here: that "the Medical-Vocational guidelines can be relied on in the presence of a nonexertional limitation, so long as the limitation does not significantly diminish the range of work that could otherwise be exertionally possible." (Appellee's Br. at 25); *cf. Sykes*, 228 F.3d at 266. We squarely rejected this argument in *Sykes*:

> "[I]n the absence of a rulemaking establishing the fact of an undiminished occupational base, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact (and providing the claimant with an opportunity to counter the conclusion).

*Sykes*, 228 F.3d at 261.[4]

---

demands of jobs are classified as nonexertional. *Id.*

[4]

Despite Appellee's wishes to the contrary, the Second Circuit's approach in *Bapp v. Bowen*, 802 F.2d 601 (2d Cir. 1986), is not the law in this circuit. We advise Appellee to review our decision in *Sykes* and the Social Security Administration's Acquiescence Ruling 01-1(3) before addressing this issue in the future.

Our recent decision in *Allen v. Barnhart*, 417 F.3d 396 (3d Cir. 2005), is not to the contrary. In *Allen*, the ALJ "specifically referred" to a Social Security Ruling ("SSR") "address[ing] the precise issue" presented in that case. *Id.* at 403-04. We held that "if the Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Id.* at 407. In the instant case, the ALJ referred only to SSR 83-10 and SSR 85-15. These Rulings do not address several of the nonexertional limitations found by the ALJ, such as Appellant's inability to shift rapidly between positions or locations, his limitations on the performance of perceptual-motor tasks, and his limitation in the use of certain chairs.[5]

We are particularly concerned with the ALJ's treatment of Appellant's limitation as to the kinds of chairs in which he can sit. The ALJ summarily concluded that Appellant's "inability to use chairs that are not designed to support his weight would not significantly erode the sedentary occupational base since sturdy chairs are typically readily available in settings where sedentary work is done." (R. at 26.) The ALJ did not take or produce vocational evidence regarding this disputed issue, nor did he properly follow the steps for taking official notice. *See Sykes*, 228 F.3d at 261. The record contains no evidence supporting the ALJ's conclusion. In fact, the only evidence on the record concerning this issue is Appellant's assertion that he breaks chairs because of his weight. So far as we can see from the record, the ALJ's conclusion is based solely on his own opinion. This lack of supporting evidence highlights why we require an ALJ either to take vocational evidence or to follow the proper steps to take official notice, providing the claimant with an opportunity to see the evidence on which the ALJ

---

[5] On remand, the ALJ should also consider whether Appellant's obesity itself is a nonexertional limitation. *See Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997).

11

relies and with an opportunity to challenge the ALJ's conclusion. *See Sykes*, 228 F.3d at 273.

Because the record is not fully developed, we will remand the case for further proceedings in accordance with this opinion. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d. Cir. 2003). We remind the ALJ that it is his duty to develop the record. *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). We further remind the ALJ that, under the Supreme Court's decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999), he is not entitled to consider potential accommodation by employers in determining the availability of jobs in the national economy that Appellant can perform.

## CONCLUSION

In light of the foregoing, we will reverse the District Court's order and remand to the District Court with directions to remand the matter to the Commissioner for further proceedings consistent with this opinion.