

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2007

# Rodriguez v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2810

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Rodriguez v. Comm Social Security" (2007). *2007 Decisions.* Paper 1272.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1272

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-2810

RAFAEL RODRIGUEZ,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 04-CV-5550
District Judge: Joseph A. Greenaway, Jr.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 13, 2007

Before: SMITH and COWEN, *Circuit Judges*,
and YOHN, *District Judge**

(Filed: April 17, 2007 )

OPINION

---

*The Honorable William H. Yohn, Senior United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

SMITH, *Circuit Judge.*

Rafael Rodriguez appeals from the District Court judgment affirming the final decision of the Commissioner of Social Security, which denied his application for benefits under Title II of the Social Security Act.[1] Our review is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). For the reasons set forth below, we conclude that substantial evidence is lacking in certain respects and we will remand this matter for further proceedings.

I.

Rodriguez worked for many years as a machine operator and set-up man for a metal shop. He was laid off in October 2001. Prior to his layoff, he had been diagnosed with systemic lupus erythematosus (SLE), an autoimmune disease that can affect multiple body systems, and was being treated by Dr. Hsu, a rheumatologist at the Robert Wood Johnson Medical School. In September of

---

[1]The District Court had jurisdiction under 42 U.S.C. § 405(g). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

2001, Dr. Hsu characterized Rodriguez's SLE as mild and noted that he did not have any systemic findings. She acknowledged that he suffered from joint pains, and she opined that he may find it difficult to work as a machinist. She further noted that training for light duty or desk work may be appropriate. In June 2003, Dr. Hsu's physical examination of Rodriguez confirmed the "lack of objective findings for active SLE."

The following month, in July 2003, Dr. Hsu opined that Rodriguez was unable to carry more than five pounds and could stand and walk for no more than a half hour. Rodriguez's other treating physician, Dr. Cramer, a family practitioner who followed him since 1979, also opined in a letter dated June 20, 2003, that Rodriguez was disabled and unable to do work related physical activities.

In addition to Rodriguez's physical malady, there were also concerns raised about his mental status. A consultative examination by Dr. Baharlias in April 2002 yielded an opinion that Rodriguez had a severe cognitive deficit that must have resulted from two motor vehicle accidents and that he was developing early dementia. In a report dated July 1, 2002, Dr. Cramer advised that he had been treating Rodriguez since 1983 for an anxiety disorder with Lorazepam. Dr. Cramer reported that Rodriguez had "never had Dementia." In contrast to Dr.

Baharlias's report, Dr. Cramer's detailed three page report failed to mention that Rodriguez had ever been involved in a motor vehicle accident or sustained a head injury. Dr. Cramer opined, however, that Rodriguez's anxiety disorder caused a "difficulty in focusing and maintaining a sustained concentration on his activities which would interfere with any work related physical activity."

Rodriguez's medical records were reviewed by Dr. Macchia, a psychologist, and Dr. Gieseken. They concluded that Rodriguez's ability to perform most mental activities was not significantly limited. But they checked the box on the form provided to indicate that Rodriguez's ability to maintain attention and concentration for an extended period was moderately limited, as was his ability to respond appropriately to changes in his work environment and to set realistic goals or make plans independently of others. In the narrative report that accompanied these assessments, Dr. Macchia and Dr. Gieseken discounted Dr. Baharlias's opinion, noting that it was contradicted by Dr. Cramer's treatment records from 1979. These physicians credited Dr. Cramer's assessment that Rodriguez suffered from a history of anxiety and opined that Rodriguez's ability to cope and adapt was moderately limited. In contrast to their earlier assessment in the form that Rodriguez's ability to maintain attention and concentration for extended periods of time was moderately limited, these physicians stated that Rodriguez was able to

4

concentrate and persist in a task.

After a hearing and consideration of the medical evidence, the administrative law judge (ALJ) conducted the familiar five step analysis set forth in 20 C.F.R. § 404.1520, and concluded that Rodriguez was not disabled. The District Court affirmed the final decision of the Commissioner.

This appeal followed. Rodriguez asserts that the ALJ erred in several respects. He challenges the ALJ's analysis at step three, contending that the ALJ failed to specifically address whether his SLE satisfied or equaled the criteria of listing 14.02 in appendix 1. We find no error by the ALJ in this regard. It is true that the ALJ did not specify the listing by number. This does not preclude meaningful review, however, in light of the single listing for SLE and Dr. Hsu's opinions in 2001 and June 2003, which were credited by the ALJ, that Rodriguez's condition was mild and that there were no objective findings for active SLE. Accordingly, there was no basis for the ALJ to conclude that Rodriguez's SLE satisfied the severity requirements of the listing in § 14.02. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (2007) (pointing out that meaningful review at step three is informed by the extent of the ALJ's review of the objective medical evidence).

Rodriguez also contends that the ALJ erred by refusing to acknowledge that

he had a psychiatric impairment. He submits that the ALJ improperly discounted Dr. Baharlias's opinion that he had dementia and was severely cognitively impaired. We find no error in discounting Dr. Baharlias's reports as they conflicted with Dr. Cramer's detailed report, which was entitled to more weight in light of his status as Rodriguez's family doctor since 1979. As we explained in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Id.* at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987); *see also* 20 C.F.R. § 404.1527(d)(2).

Nonetheless, we are troubled by the ALJ's evaluation of Rodriguez's mental impairment because, after explaining the basis for discounting Dr. Baharlias's opinion, the ALJ accorded "significant weight" to the opinions of Dr. Macchia and Dr. Gieseken on the basis that their conclusions were not contradicted by any medical evidence in the record. The opinions of these nonexamining physicians, however, were internally inconsistent with regard to Rodriguez's ability to sustain concentration. As noted above, the physicians checked the box to indicate that Rodriguez's ability in this regard was moderately limited, and yet explained in their narrative that he could concentrate and persist in an activity. Thus, if we

6

assume that the opinions of Dr. Macchia and Dr. Gieseken were that Rodriguez had no limitation in his ability to concentrate for extended periods of time, the opinions conflict with that of Dr. Cramer, who opined that Rodriguez's anxiety disorder caused a "difficulty in focusing and maintaining a sustained concentration on his activities which would interfere with any work related physical activity." If we assume that the opinion of these nonexamining physicians is that Rodriguez has some limitation in his ability to sustain concentration for extended periods of time, there is a consensus among the practitioners, both nonexamining and treating, that Rodriguez's mental impairment restricted his ability to focus and maintain concentration.

Under either scenario, the ALJ had to explain why he did or did not credit the medical evidence that Rodriguez had a non-exertional limitation with respect to his ability to concentrate for extended periods of time. Instead, the ALJ's decision failed to consider this limitation which, if credited, would preclude application of the Grids. *See Sykes v. Apfel*, 228 F.3d 259, 270 (3d Cir. 2000) (reiterating that the presence of non-exertional impairments precludes application of the Grids). Accordingly, we will vacate the judgment of the District Court and

will remand for further proceedings.[2]



[2]We also note that the ALJ's decision is internally inconsistent. The ALJ initially found that Rodriguez's anxiety constituted a severe impairment at step two. Thereafter, he found that Rodriguez "has no mental disorder that is severe within the definition of the Social Security Act." We are at a loss to understand how Rodriguez may be found to have a severe mental impairment initially and yet be found to suffer no severe mental impairment thereafter.