

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2008

# Zonak v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3143

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Zonak v. Comm Social Security" (2008). *2008 Decisions.* Paper 804.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/804

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-3143

———————

NORA T. ZONAK, as personal representative
for Joseph C. Zonak, Deceased,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 05-cv-05995)
District Judge:  The Honorable William J. Martini

———————

Submitted Under Third Circuit LAR 34.1(a)
June 25, 2008

———————

Before: SLOVITER, BARRY and ROTH, Circuit Judges

(Opinion Filed: July 24, 2008)

———————

OPINION

———————


BARRY, Circuit Judge

    Nora Zonak appeals from an order of the District Court affirming the decision of

the Commissioner of Social Security denying disability insurance benefits ("DIB") to her

now-deceased husband, Joseph Zonak ("Zonak"). For the reasons that follow, we will affirm.

I.

Because the parties are well acquainted with the factual and procedural background of this case, we will refer only to those facts bearing directly on our disposition of this appeal.

Zonak was born on January 10, 1963. He had a high school education and worked as a delivery truck driver for approximately 19 years before he retired at the suggestion of his doctor on May 14, 2003. Zonak filed an application for DIB on June 6, 2003, alleging an onset date of May 14, 2003 due to dilated cardiomyopathy, coronary artery disease, congestive heart failure, high blood pressure, and gout. After his application was denied initially and on reconsideration, Zonak received a de novo hearing before an administrative law judge ("ALJ"). The ALJ evaluated Zonak's claim under the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520 and made findings adverse to Zonak at steps three and five. With respect to step three, the ALJ determined that none of Zonak's impairments met or equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). At step five, the ALJ found that although Zonak was not able to return to his previous line of employment, he was not disabled because he had "the residual functional capacity to perform the full range of sedentary work." (App. at A21.) The District Court affirmed the ALJ's denial of

2

benefits, concluding that the decision was supported by substantial evidence. This timely appeal followed.

The District Court exercised jurisdiction pursuant to 42 U.S.C. § 405(g), and we have jurisdiction under 28 U.S.C. § 1291. We employ a deferential "substantial evidence" standard of review of the ALJ's factual findings, but exercise plenary review of all legal conclusions. *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citations and quotations omitted).

### III.

The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). We "do[] not require the ALJ to use particular language or adhere to a particular format in conducting his [step three] analysis." *Jones*, 364 F.3d at 505. Rather, we require only a "sufficient development of the record and explanation of findings to permit meaningful review." *Id.*

We easily conclude, as did the District Court, that substantial evidence supports the ALJ's finding at step three that Zonak's impairments did not meet or equal any of the Listings to establish disability as a matter of law. At the hearing before the ALJ, Zonak only asked the ALJ to consider whether his condition met the Listings at 4.04B and 4.04C. The ALJ did this and more. In his written decision, the ALJ noted that while he had given "particular attention" to the cardiovascular Listings at 4.03 and 4.04, he had also compared Zonak's impairments to the Listings at 2.02, 2.03, 2.04, 4.02, 6.02, 11.04A, 11.04B, 14.09, and 14.00B6. Ultimately, the ALJ determined that Zonak had not met his burden of establishing disability under any of these Listings. With respect to the cardiovascular Listings at 4.03 and 4.04, the ALJ found that Zonak did not meet the criteria of section 4.04 because he "had no ischemic ECG changes, and did not experience chest pain, in connection with the cardiac stress test." (App. at A16.) As for section 4.03, the ALJ noted that although tests performed on Zonak on September 5, 2001 "revealed abnormal left ventricular function with an ejection fraction of 30%," his ejection fraction had improved to 45% by June 4, 2003. (Id.) We have carefully reviewed the record and are satisfied that substantial evidence supports each of these findings.

We are also satisfied that the ALJ did not err by failing to consider Zonak's obesity in his analysis. Wholly aside from the fact that Zonak did not allege obesity when applying for benefits or argue before the ALJ that obesity contributed to his alleged disability, appellant's brief greatly exaggerates the facts of record in this case. Appellant

4

asserts several times in her brief that Zonak's obesity *must have* risen to the level of a disability because he stood only 5 feet tall and weighed 280 pounds, but, as the District Court noted, all but one reference in the record lists Zonak's height as at least 6 feet tall. In fact, when the ALJ asked Zonak at the hearing what his height and weight were, Zonak responded that he was 6 feet, 1 inch tall, weighed 275 lbs., and that he was the same weight when he worked as a truck driver. We agree with the District Court that "to the extent [appellant] relies on height/weight ratio as an obvious indicator of Zonak's limitations, [the] argument[] is misplaced." (App. at A5.) Moreover, despite Zonak's failure to raise the issue of obesity to the ALJ, the ALJ noted in his decision that he had "fully considered obesity in the context of the overall record evidence in making this decision." (Id. at A17.) Given that Zonak bore the burden of establishing that his obesity, in combination with his other impairments, met the requirements of one of the Listings and that he failed to raise the issue of his obesity to the ALJ, we have little difficulty concluding that the ALJ did not err by failing to more fully explore the issue in his decision.

Appellant contends, next, that the ALJ improperly rejected the medical opinion of Zonak's treating physician, Dr. Ashok Kumar, who stated in a form letter dated May 20, 2003 that Zonak was unable to return to work "until further notice." We disagree for two reasons. First, the ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of

disability—an issue reserved exclusively to the Commissioner. *See* 20 C.F.R. §

404.1527(e)(1) ("We are responsible for making the determination or decision about

whether you meet the statutory definition of disability. . . A statement by a medical source

that you are 'disabled' or 'unable to work' does not mean that we will determine that you

are disabled."); Id. § 404.1527(e)(3) ("We will not give any special significance to the

source of an opinion on issues reserved to the Commissioner described in paragraph[]

(e)(1) . . . of this section."). Second, the opinion at issue was provided on a check-box

form and no reasons were given in support of Dr. Kumar's conclusion that Zonak was

unable to work. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (declaring that

"[f]orm reports in which a physician's obligation is only to check a box or fill in a blank

are weak evidence at best").

Appellant also asserts that the ALJ failed to provide a proper evidentiary basis for

his conclusion that Zonak "had, at all material times, the residual functional capacity to

perform work that involves lifting and carrying objects weighing up to 10 pounds; sitting

up to six hours, and standing and walking up to two hours in an eight-hour workday; and

the full range of sedentary work." (App. at A18.) We once again disagree. The ALJ's

decision contains an exhaustive discussion of Zonak's medical history, most of which was

compiled while Zonak was still gainfully employed. The ALJ relied primarily on the

consultative report of Dr. Francky Merlin, a physician employed by the New Jersey

Department of Labor, who noted that Zonak

6

had no difficulty getting up from a seated position or getting on and off the examining table. There is full use of both hands and arms in dressing and undressing. Grasping strength and manipulative functions are not impaired. [Zonak] is able to flex spine forward 0 to 90 degrees, to squat and walk on his heels and toes. There is pain in the left knee but no swelling, warmth or deformity.

(Rec. at 273.) Dr. Merlin concluded that Zonak was "able to sit, stand, walk, handle objects, hear, speak and travel, but . . . should not lift or carry heavy objects." (Id. at 274.) This conclusion is consistent with the information provided by Zonak in his application for DIB, where he explained that his chest and arm pains were caused by "*frequent* heavy lifting and *constant* bending" and that the pain typically subsided after he stopped the heavy lifting and rested. (Id. at 83-84) (emphases added.) He also stated in his application that he could walk for approximately 20 minutes before he needed to stop and rest, and that his leg, ankle, and foot pain only worsened after walking "for a *prolonged* amount of time." (Id. at 85) (emphasis added.) Moreover, the ALJ cited Zonak's declaration that "he does light household chores, food shopping, cooking, manages his finances, . . . does laundry, drives a car, and makes dinner for his family." (App. at A18.) In short, substantial evidence supports the ALJ's finding that Zonak was capable of performing sedentary work.

Finally, we reject appellant's contention that the ALJ improperly discredited Zonak's subjective complaints of pain. A claimant's allegations of pain must be consistent with the objective medical evidence. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999); 20 C.F.R. § 404.1529. "Once an ALJ concludes that a medical impairment

that could reasonably cause the alleged symptoms exists, . . . the ALJ [must] determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft*, 181 F.3d at 362. In making this determination, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, and effectiveness of medication used to reduce the pain; (5) the type of treatment, other than medication, the claimant received for the pain; (6) measures the claimant has taken to relieve the pain; and (7) "[o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 416.929(c)(3).

The ALJ reviewed the evidence and concluded that while Zonak undoubtedly experienced pain while performing strenuous activities, his subjective complaints of disabling pain were not entirely credible. For the same reasons articulated above in our discussion of the ALJ's residual functional capacity analysis, we conclude that the ALJ's decision to discount Zonak's subjective complaints of pain was supported by substantial evidence.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.