

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2008

# Scuderi v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2871

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Scuderi v. Comm Social Security" (2008). *2008 Decisions.* Paper 127.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/127

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-2871

GUY SCUDERI,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 06-cv-02213)
District Judge:  The Honorable Joseph A. Greenaway

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2008

Before:  BARRY, CHAGARES, <u>Circuit Judges</u>, and COHILL,[*] <u>District Judge</u>

(Opinion Filed: December 11, 2008)

OPINION

_____

[*]  Honorable Maurice B. Cohill, Jr., Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

BARRY, <u>Circuit Judge</u>

Guy Scuderi appeals the District Court's decision upholding the Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB"). We will affirm.

**I.**

Because we write only for the parties, we recite only those facts that are relevant to our analysis. Scuderi applied for DIB on September 13, 2002, when he was forty-six years old, alleging disability due to syringomyelia. Scuderi's application was initially denied, and a hearing was held before an Administrative Law Judge ("ALJ"). On July 29, 2004, the ALJ issued a decision evaluating Scuderi's claim pursuant to the five-step sequential analysis in 20 C.F.R. § 404.1520 and denying benefits. The Appeals Council reversed, however, finding that the ALJ should have obtained updated medical records, ordered a post-hearing consultative examination in the absence of current records, and consulted a vocational expert at the hearing.

A second hearing was held before the ALJ, and a vocational expert testified. On February 1, 2006, the ALJ again denied benefits, and, on March 17, 2006, the Appeals Council denied Scuderi's request for review. Scuderi appealed to the District Court pursuant to 42 U.S.C. § 405(g). In a detailed opinion examining all of Scuderi's medical records and analyzing all of the testimony, the Court found that the Commissioner's decision was supported by substantial evidence and upheld the Commissioner's final

determination.

Scuderi now argues that the ALJ erred when she: (1) failed to adequately consider whether Scuderi met Listing 11.19B, (2) failed to explain and identify which evidence supported and did not support her residual functional capacity ("RFC") finding and failed to consider the effect of Scuderi's pain in her RFC evaluation, and (3) relied on testimony from a vocational expert in response to inaccurate and inapplicable hypotheticals.

## II.

The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have jurisdiction pursuant to 28 U.S.C. § 1291. As did the District Court, we review the ALJ's application of law de novo, and we review the ALJ's factual findings for substantial evidence. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## III.

### A. Step Three: Whether Claimant Meets a Listing of Impairment

Scuderi argues that the ALJ erred at step three of the 20 C.F.R. § 404.1520 analysis because she did not specifically identify which Listing she was considering and did not adequately explain why Scuderi, despite his severe impairment, did not meet any

Listing.[2]  In <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20 (3d Cir. 2000), we held that an ALJ must provide an explanation of his or her reasoning at step three in order to allow us to engage in meaningful judicial review.  As the District Court recognized, however, we also held in <u>Jones v. Barnhart</u>, 364 F.3d 502, 505 (3d Cir. 2004), that an ALJ need not "use particular language or adhere to a particular format in conducting his analysis."  We stated:

> Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review.  In this case, the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing . . . .

<u>Jones</u>, 364 F.3d at 505 (internal citation omitted).

Thus, an ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements.  In this case, Listing 11.19B for syringomyelia is potentially applicable, and it requires "[d]isorganization of motor function as described in 11.04B."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous

_____

[2] Scuderi raised this issue before the Appeals Council after the ALJ's decision of July 29, 2004, and argues that the Appeals Council remanded in part because of it.  (<u>See</u> Appellant's Br at 29.)  We disagree.  The Appeals Council found that "[i]t seems fairly clear that the present record does not establish that the listing is met or equaled." (A-40.) It did not hold that the ALJ erred at step three and did not remand on that basis.

4

movements, or gait and station." Id.

The ALJ's decision reflects adequate consideration of the "disorganization of motor function" requirement of Listing 11.19B, despite the fact that that specific Listing is not highlighted. The ALJ reviewed all of the medical evidence and accurately concluded from the opinions of Drs. Anthony Frempong-Boadu and Richard Siegfried that, except for decreased fine finger movements in his left hand and decreased sensation in his left upper extremity, Scuderi has normal motor, sensory, and reflex functions in the lower and upper extremities. The ALJ also noted that Scuderi reports being able to drive when necessary and perform housekeeping tasks including meal preparation, vacuuming, and shopping. Thus, the ALJ found, in a conclusion supported by substantial evidence, that Scuderi does not have significant and persistent disorganization of motor function in two or more extremities. The ALJ's analysis was sufficient to permit meaningful judicial review of her conclusion at step three of the sequential analysis.

## B. Step Four: Determination of Residual Functional Capacity

Scuderi also argues that the ALJ did not provide an adequate evidentiary foundation to support the RFC determination. The ALJ ultimately determined that

> claimant has the [RFC] to lift light objects, such as those weighing up to twenty pounds, and sit, stand, and walk as needed, but cannot perform more than occasional reaching, pushing, pulling or tasks requiring feeling with the left upper extremity and non-dominant hand. Additionally, as the result of his medication, the claimant is unable to engage in complex or detailed tasks on a sustained basis.

(A-21.)

5

In Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981), we held that an ALJ must discuss not only the evidence that supports his or her decision, but also the evidence that was rejected. The ALJ did so here. She analyzed the opinions of Scuderi's treating physicians, Drs. Frempong-Boadu, Siegfried, Motz, and Spinapolice, and the opinion of Dr. Weber, a physician who examined Scuderi on behalf of New Jersey's Disability Determination Services ("DDS"). Her ultimate conclusion is consistent with the opinions of Drs. Frempong-Boadu and Weber. Dr. Frempong-Boadu recommended that Scuderi avoid all heavy lifting and any work requiring the use of fine finger movements with his left hand. Dr. Weber found that Scuderi cannot do heavy lifting, is limited in his ability to push and pull with his upper extremities and in his abilities to reach and feel, and should avoid hazards due to limitations in his ability to balance. Another assessment from an unidentified DDS physician reports similar limitations. All of these limitations and conditions were taken into account in the ALJ's RFC determination.

To be sure, the ALJ's RFC determination is inconsistent with the reports of Dr. Motz and Scuderi's own statements about how his impairment affects his abilities. The ALJ explained, however, why she rejected these reports in favor of the reports by Drs. Frempong-Boadu and Weber, as required by Cotter. In addition to the limitations found by Drs. Frempong-Boadu and Weber, Dr. Motz found that Scuderi had a complete inability to balance and a limitation on his ability to stand or walk more than 15 feet. The ALJ explained that she placed less reliance on Dr. Motz's opinion because Dr. Motz

6

"provided no specifics with respect to the degree of limitations imposed." (A-22, see Motz's RFC report at A-258-61.) Indeed, Dr. Motz's report provides little detail about Scuderi's impairments and stated that it was "unknown" how many pounds Scuderi would be able to lift or carry and how many hours Scuderi would be able to stand or walk in an 8-hour work day. The ALJ also explained that, based on Scuderi's continued activity level, his statements concerning the intensity, duration, and limiting effects of his impairments were not entirely credible.

Scuderi argues, for the first time, that the ALJ did not give adequate consideration to his complaints of pain. The ALJ's decision, however, specifically discussed treatment records from Ronald Spinapolice, D.O., a pain management specialist, whose most recent progress notes from 2005 state that Scuderi was "doing well [and] offers no complaints, with good pain relief" from the medications. (A-293.) The ALJ took Scuderi's pain into account in her RFC determination when she recognized Scuderi's need for constant pain medication and found that, due to the medication's side effects, he cannot engage in complex or detailed tasks on a sustained basis.

## C.   Step Five:  Availability of Jobs in the National Economy

Finally, Scuderi argues that the ALJ erred at step five of the analysis when she relied on testimony from the vocational expert that, he alleges, was given in response to hypotheticals not corresponding to the RFC determination eventually reached by the ALJ. Several hypotheticals were posed to the vocational expert by both the ALJ and by counsel

7

for Scuderi, but the hypothetical relied on by the ALJ[3] involved a person who could do light work, with no frequent push-pull with the upper extremities, no ladders, ropes, or scaffolds, only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, no frequent fine fingering, and no hazards. The vocational expert responded that a person with this RFC could work as a Marker, DOT 209.587-034, or as a Sales Attendant, DOT 299.677-010. The ALJ thereafter confirmed that this hypothetical person would be employable provided that he could concentrate at a simple level, and if he could not do so, he would not be employable.

This hypothetical compares favorably with the ALJ's ultimate RFC determination that

> claimant has the [RFC] to lift light objects, such as those weighing up to twenty pounds, and sit, stand, and walk as needed, but cannot perform more than occasional reaching, pushing, pulling or tasks requiring feeling with the left upper extremity and non-dominant hand. Additionally, as the result of his medication, the claimant is unable to engage in complex or detailed tasks on a sustained basis.

(A-21.) While the hypothetical did not take into consideration the effect of Scuderi's pain medication on his ability to do work-related activities, the ALJ did follow up on the hypothetical to include consideration of Scuderi's ability to concentrate at a simple level.

---

[3] Although Scuderi argues to the contrary, the ALJ did make clear which hypothetical she was relying on because she stated in her decision that, in response to the hypothetical, the vocational expert answered that the person would be able to perform the requirements of the "Marker" occupation, DOT 209.587-034. Review of the transcript indicates that the vocational expert gave "Marker" as an answer to only one hypothetical.

Therefore, the ALJ did not err when she relied on the vocational expert's testimony in response to this hypothetical.

## IV.

For the reasons set forth above, we will affirm the decision of the District Court affirming the decision of the Commissioner.