NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3699
_____

ERIKA BRYANT SARGENT,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-00186)
District Judge:  Honorable Nora B. Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
April 17, 2012
_____

Before:  SCIRICA, AMBRO and NYGAARD, Circuit Judges

(Opinion filed April 18, 2012)
_____

OPINION
_____

AMBRO, Circuit Judge

　　Erika Sargent was denied benefits under the Social Security Act.  She sought

review of the decision of the Commissioner of Social Security (the "Commissioner") in

the District Court, which granted summary judgment to the Commissioner. For the reasons that follow, we affirm.

## I. Background

In January 2009, Sargent applied for Disability Insurance Benefits and for Supplemental Security Income under the Social Security Act. She suffers from both physical and psychological impairments. Physically, she has hepatitis C, anemia, and degenerative disc disease. Psychologically, she has major depressive disorder, post-traumatic stress disorder, panic disorder, and a history of drug abuse.

After the state agency denied her benefits, she requested a hearing before an Administrative Law Judge ("ALJ"). At the hearing, Sargent, who was represented by counsel, testified about her symptoms and medical history. The ALJ also took the testimony of an impartial vocational expert concerning the employment that might be suitable for Sargent in light of her conditions. In September 2009, the ALJ issued a decision denying Sargent's application. She then petitioned the Appeals Council, which denied review and thus made the ALJ's decision the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210.

Having exhausted her administrative remedies, Sargent filed suit in the District Court seeking review of the ALJ's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). She asserted a panoply of errors, including improper credibility determinations, insufficient explanation that she lacked an "impairment" as defined by regulation, and lack of substantial evidence regarding the employment available to her. On cross-motions for

2

summary judgment, the District Court entered judgment for the Commissioner, addressing each of Sargent's contentions at length. This timely appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 42 U.S.C. § 405(g). We have jurisdiction pursuant to 28 U.S.C. § 1291.

"Like the District Court, we must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Mercy Home Health v. Leavitt*, 436 F.3d 370, 380 (3d Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III. Discussion

The Social Security Act authorizes the Commissioner to pay benefits to disabled persons. 42 U.S.C. §§ 423, 1382. It defines "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). An individual cannot engage in "substantial gainful activity" if she "cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether . . . a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." *Id.* § 423(d)(2)(A).

3

The Commissioner applies a five-step test to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In the first four steps, which are not at issue in our case, the Commissioner considers the medical severity of the claimant's impairments and determines her residual functional capacity. *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). "The claimant bears the ultimate burden of establishing steps one through four." *Id.* at 92. At the fifth step, the burden shifts to the Commissioner to show that the claimant can make an adjustment to other work. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The Commissioner "will look at [the claimant's] ability to adjust to other work by considering [her] residual functional capacity and [her] vocational factors of age, education, and work experience. Any other work . . . that [she] can adjust to must exist in significant numbers in the national economy . . . ." 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). "The ALJ will often seek the assistance of a vocational expert at this fifth step." *Plummer*, 186 F.3d at 428; *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e).

As her sole ground for appeal, Sargent claims that the ALJ's fifth-step determination that she is able to adjust to other work is not supported by substantial evidence. She bases her claim on the testimony of the vocational expert at the ALJ hearing. The ALJ asked the vocational expert two hypothetical questions to determine what work is available for individuals with two types of physical limitations. One of them regarded work at the "medium exertional level"; the other regarded work at the "sedentary level." A.R. 345-47. Both questions involved only physical limitations. Counsel then noted that Sargent's limitations are not just physical but psychological. The

4

ALJ thus re-asked her "sedentary level" hypothetical question but included psychological limitations as well as physical limitations. *Id.* at 349-50. In all, there were three relevant hypothetical questions: (1) "medium level" physical limitations with no psychological limitations; (2) "sedentary level" physical limitations with no psychological limitations; and (3) "sedentary level" physical limitations with psychological limitations. The vocational expert identified work available for each question. After the hearing, the ALJ held that Sargent was limited to the "sedentary level" and had psychological limitations, so question 3 became the operative one.

Sargent urges that the ALJ's decision was flawed because the vocational expert's answers were not in line with the ALJ's hypothetical questions. In response to question 1, the expert identified three "medium level" positions: stock clerk, hand packager, and light assembly work. *Id.* at 345-46. In response to question 2, he identified three "sedentary level" positions: cashier, telephone solicitor, and gate guard. *Id.* at 347. And in response to question 3, he identified three "sedentary level" positions with psychological limitations: sorter/grader, hand packager, and light assembly work. *Id.* at 350. The trouble with these responses, Sargent maintains, is that two of the three "sedentary level" answers to question 3 (hand packager and light assembly work) were also "medium level" answers to question 1. Indeed, in the Department of Labor's Dictionary of Occupational Titles ("DOT"), all three positions given in response to question 3 have exertion levels above "sedentary."[1] Because question 3 characterized

---

[1] Both the ALJ and the vocational expert relied on the classifications in the DOT, as the applicable regulations permit. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

Sargent, she asserts that the Commissioner has not provided substantial evidence that work is available given her physical and psychological limitations.

As we have explained, "although some minor inconsistencies may exist between the vocational testimony and DOT information," it remains possible that "the testimony provide[s] substantial evidence for the ALJ's conclusions." *Rutherford*, 399 F.3d at 558. No law or regulation requires the ALJ to fit the claimant into precise categories or to find that a specific number of jobs are available. Rather, the "obligation of an ALJ" is "to develop the record," *id.* at 556, so as to determine whether there is suitable "gainful work . . . in the national economy," 42 U.S.C. § 423(d)(2)(A). In this context, "[w]hen there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the [expert's] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

In this case, the full colloquy between the ALJ and the vocational expert suffices as substantial evidence. Pursuant to her obligation under Ruling 00-4p, the ALJ sought to verify that the expert's testimony was consistent with the DOT. A.R. 351. The expert explained that while the positions with which he answered question 3 were not "sedentary level," the DOT lists only the highest exertional level for each occupation. *Id.* Thus, while some sorter/grader positions (for example) are more strenuous than "sedentary level," others are at "sedentary level." The vocational expert's numbers confirm that he accounted for the difference between "medium" in question 1 and "sedentary" in question 3. In response to question 1, which concerned the "medium

6

exertional level," the expert testified that there were 160,000 light assembly positions and 200,000 hand packager positions. *Id.* at 345-46. But in response to question 3, which concerned the "sedentary level," his numbers for light assembly and hand packager positions were lower—101,000 and 156,000, respectively. *Id.* at 350. The only explanation in the record for those reductions is that the vocational expert accounted for the limitations present in question 3 but absent in question 1.

*   *   *   *   *

The ALJ's exchange with the vocational expert provided substantial evidence that positions exist "in significant numbers in the national economy" that are suitable given Sargent's limitations. *See* 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). The Commissioner therefore satisfied his burden at step five of the disability determination process, and we affirm the judgment of the District Court.