**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2633
_____

VANDETTA A. CUNNINGHAM,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4:10-cv-01374)
District Judge:  Honorable Malcolm Muir

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 11, 2012

Before:  SLOVITER, GREENAWAY, JR. and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 13, 2012)
_____

OPINION
_____

PER CURIAM

Vandetta A. Cunningham appeals from an order of the District Court affirming the decision of an Administrative Law Judge ("ALJ") to deny Cunningham's applications for disability insurance benefits and supplemental security income. We will affirm.

**I.**

Cunningham applied for disability insurance benefits and supplemental social security income in 2007, alleging that she had been disabled since May 2004 due to major depression disorder, anxiety disorder, insomnia, gastrointestinal reflux disorder, fibromyalgia, panic attacks, asthma, allergies, headaches, somatoform disorder, and hypertension.[1] She was almost age forty-two at the time she applied for benefits, and had worked as a licensed practical nurse from 1992 until 2004. Cunningham worked for two months as a home health care nurse in 2006, but had not worked since that time.

An ALJ conducted a hearing and denied Cunningham's applications, concluding that the record as a whole did not establish that she was disabled. The ALJ found that Cunningham has hypertension, asthma, fibromyalgia/myofascial pain syndrome/myalgias, osteoarthritis, migraine headaches, anxiety disorder, depressive disorder with associated insomnia, and a history of somatoform disorder, which are severe but do not require an automatic determination of disability. Specifically, the ALJ found that the evidence regarding Cunningham's physical impairments did not match or equal the criteria of any impairment identified by regulation as presumptively severe

---

[1] A prior application for benefits was denied in 2006.

enough to preclude gainful activity ("listed impairment"). The ALJ made a similar finding regarding Cunningham's mental impairments.

The ALJ then considered the impact of Cunningham's impairments on her ability to perform work, finding that her osteoarthritis, fibromyalgia, hypertension, and migraine headaches limit her to light activity. As a result, the ALJ found that Cunningham was unable to perform her past relevant work as a licensed practical nurse because it required medium exertion. The ALJ also found that Cunningham's other impairments further limit her ability to work. Specifically, asthma and allergies require her to avoid frequent exposure to fumes, odors, dusts, gases, chemical irritants, temperature extremes, extreme dampness or humidity, and environments with poor ventilation, excessive noise, or excessive vibration. Her anxiety disorder, depressive disorder, and history of somatoform disorder limit her to simple, repetitive tasks and decisions, a relatively change-free work environment, occasional interaction with others, and a stress-free environment. Based on the testimony of a vocational expert who considered these limitations, the ALJ found that Cunningham has the capacity to perform certain jobs, including a racker in a bakery, a bagger in a dry cleaner or laundry, and a small parts assembler of plastic or medical products. Accordingly, the ALJ found that Cunningham is not disabled.

Cunningham appealed. The Appeals Council of the Social Security Administration declined further review, making the ALJ's decision the final decision of

3

the Commissioner of Social Security.  Cunningham then sought judicial review of the

ALJ's decision.  The District Court affirmed and entered judgment in favor of the

Commissioner.  This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is deferential, as it is limited to determining whether the ALJ's decision is supported by substantial evidence. See, e.g., Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Substantial evidence is "'more than a mere scintilla,' and is defined as 'such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

## III.

An individual who is disabled, and otherwise eligible based on income and resources, is entitled to benefits under the Social Security Act. 42 U.S.C. § 1381a. To establish disability, "a claimant must demonstrate [that] there is some 'medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period.'" Plummer, 186 F.3d at 427 (quoting Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). A claimant is unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

5

any other kind of substantial gainful work which exists in the national economy." Id. at 427-28 (quotation marks omitted). To determine whether a claimant is disabled, the Social Security Administration considers, in sequence, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that is the same as or equivalent to an impairment listed by the Administration as presumptively precluding any gainful activity; (4) can return to past relevant work despite the impairment; and (5) is capable of performing other work in the national economy. 20 C.F.R. § 404.1520; Brewster v. Heckler, 786 F.2d 581, 583-84 (3d Cir. 1986).

Cunningham argues on appeal that the ALJ: (1) substituted her own opinion for the objective medical evidence to determine that Cunningham's impairments did not match or equal listed impairments; (2) improperly used Cunningham's ability to engage in minimal activities of daily living to conclude that she could work full-time; (3) disregarded her psychologist's opinion that she was unable to work; and (4) disregarded the vocational expert's testimony and identified jobs incompatible with Cunningham's limitations. Cunningham also argues that the District Court erred by not reviewing additional evidence she submitted to the Appeals Council. For the reasons that follow, we conclude that these arguments lack merit.

A. **Substantial Evidence Supports the ALJ's Determination that Cunningham's Impairments Did Not Match or Equal Listed Impairments**

6

Cunningham argues that the ALJ relied on her own opinion, rather than the medical evidence, to determine that her impairments did not match or equal any listed impairments.[2] To match a listed impairment, a claimant's impairment must satisfy all of the criteria for the listing. 20 C.F.R. § 404.1525(c)(3). A claimant's impairment is "medically equivalent" if it is at least equal in severity and duration to the criteria of a listed impairment. 20 C.F.R. § 404.1526(a).[3] This is the focus of step 3 of the sequential analysis for determining whether a claimant is disabled, and if a claimant's impairment matches or equals a listed impairment, then he or she is disabled and no further analysis is necessary. See, e.g., Brewster, 786 F.2d at 583-84.

In this case, the ALJ discussed the evidence regarding Cunningham's hypertension, asthma, fibromyalgia/myofascial pain syndrome/myalgias, osteoarthritis, migraine headaches, anxiety disorder, depressive disorder, and history of somatoform disorder in some detail. See Supplemental Appendix ("S.A.") at 24-34. The ALJ identified the musculoskeletal system, respiratory system, cardiovascular system, and neurological sections of the listings as relevant to Cunningham's physical impairments.

---

[2] In the District Court, Cunningham challenged the ALJ's determination only as it pertained to her anxiety disorder, depression, and headaches. Her assertion on appeal that the "entire medical records[sic]" establish her disability appears to dispute all of the ALJ's findings, so we will review the findings for all impairments in our consideration of this issue.

[3] Medical equivalence can be found when a claimant has: (1) a listed impairment with medical findings that are at least of equal significance to the required criteria; (2) an impairment closely analogous to a listed impairment; or (3) a combination of impairments with medical findings of equal significance to the criteria of an analogous

The listings are detailed and include very specific criteria. We will note only that, in general, the disorders of the musculoskeletal system are characterized by the inability to walk effectively or to perform fine and gross movements effectively. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00. Disorders of the respiratory system are characterized by irreversible loss of pulmonary function. Id. § 3.00. Disorders of the cardiovascular system are characterized by improper functioning of the heart or circulatory system. Id. § 4.00. Neurological disorders include epilepsy, brain tumors, multiple sclerosis, traumatic brain injury, amyotrophic lateral sclerosis, and persistent disorganization of motor function. Id. § 11.00. The ALJ determined that Cunningham's medical evidence did not contain findings that matched or equaled the criteria for any subsection of those listings. We will highlight some of the evidence supporting that decision.

Regarding osteoarthritis and fibromyalgia/myofascial pain syndrome/myalgias, the evidence showed that Cunningham had moderate spasms and tenderness in the trapezius and musculature of the back, moderate degenerative arthritis in both knees, minimal degenerative arthritis in both ankles and the small joints of both feet, moderate degenerative changes in the small joints of the hands, but, in general, she had minimal distress and normal range of motion in most areas examined. S.A. at 26-27, 32. Moreover, there was no evidence of significant motor or sensory loss, or significant degenerative abnormality of the spine. Id. at 37. The most recent evidence from her

listed impairment. 20 C.F.R. § 404.1526(b).

8

rheumatologist indicated a "reasonably stable" physical exam, good pain control with medication, and a general assessment that Cunningham was doing better than might have been anticipated. Id. at 27. Regarding asthma and hypertension, the evidence tended to show that both were made better or controlled by medication and that Cunningham had clear lungs, a regular heart rate and rhythm, and no edema of the extremities. Id. Regarding headaches, the medical evidence showed that Cunningham consistently reported migraines. She was treated with medication, which helped to some extent. Id. There was no evidence that Cunningham had ever been referred for diagnostic studies for her migraines. Id. Cunningham also reported improvements at times in her migraines. Id. at 33.

As for Cunningham's depressive disorder with associated insomnia, anxiety disorder, and history of somatoform disorder, the ALJ identified the affective disorders, anxiety related disorders, and somatoform disorders as the relevant listings. In general, the required level of severity for these disorders may be established when the criteria for both parts A and B of the listing are satisfied.[4] 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06, 12.07. Part B for each of these disorders requires that a claimant's impairments result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked

---

[4] The part A criteria are medical findings that substantiate the presence of the mental disorder; the part B criteria are functional limitations resulting from the impairment that are incompatible with the ability to do any gainful work. 20 C.F.R. pt. 404, subpt. P, app.

difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. A "marked" restriction or difficulty is one that is more than moderate but less than extreme and that "interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). The ALJ considered in detail the evidence regarding Cunningham's functional limitations stemming from her mental impairments and found that they did not satisfy the Part B criteria. S.A. at 28-34. Again, we will note briefly only some of the evidence supporting the ALJ's decision.

The ALJ found mild limitations on the activities of daily living, relying in part on the fact that Cunningham worked on a part-time basis in 2006 and reported that she cared for her own personal needs, drove locally, made simple meals for herself, woke her children for school, attended medical appointments, performed household chores, went shopping on a weekly basis, paid her bills, and managed a checkbook and savings account. S.A. at 28. The ALJ also relied on the records of various doctors and therapists indicating that Cunningham cared for a mentally handicapped daughter, had gone on an out-of-state trip, and planned to go on a cruise vacation. Id. The ALJ found moderate limitations in social function, based in part on Cunningham reporting that she lives with three children, one of whom has special needs, speaks with friends and family on a weekly or biweekly basis, had at one time attended church, had taken care of people in

---

1, § 12.00(A).

10

their homes, and had never been fired or laid off for failing to get along with others. Id. at 29. The ALJ also relied on reports from doctors and therapists that Cunningham was pleasant and cooperative during appointments, and indications that she was getting out more and less angry. Id. The ALJ found moderate limitations in concentration, persistence, and pace, given Cunningham's claims that she has difficulty motivating herself and concentrating. Id. But Cunningham indicated that she could follow simple written instructions and manage her basic finances, and had at one time told a doctor she only occasionally had difficulty focusing. Id. Doctors also reported that Cunningham was alert during appointments and had normal speech and logical thought processes, and the ALJ noted that she showed no "overt" lapses in concentration during the administrative hearing. Id. Finally, the ALJ did not find repeated episodes of decompensation,[5] observing that Cunningham had never been hospitalized for a mental condition. Id. at 30. Doctors' reports indicated that her mental impairments seemed to be controlled with medication and regular psychotherapy sessions. Id. Furthermore, on one occasion, a psychiatric resident noted that Cunningham "seemed to have a lot invested in illness (i.e., disability, housing)." Id.

---

[5] Episodes of decompensation are defined as a temporary increase in symptoms accompanied by a loss in adaptive functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). They may be inferred from documents showing alteration in medication or the need for more structured psychological support, such as hospitalization. Id. Repeated episodes of extended duration are three episodes within a year, each lasting at least two weeks. Id.

11

In contrast to the ALJ's detailed discussion of the medical evidence, Cunningham offers only the cursory assertion that the ALJ substituted her own opinion for that evidence. She does not, however, indicate what aspect of the ALJ's decision reflects a subjective opinion, nor does she identify any particular medical evidence that was overlooked.[6] Furthermore, she does not identify what medical evidence would establish that her impairments met or equaled listed impairments and would thus undermine the ALJ's determination to the contrary.

To the extent that Cunningham argues that the ALJ overlooked her subjective complaints about chronic pain and other symptoms, we note that the ALJ considered those complaints in detail. S.A. at 31-34. However, the ALJ found Cunningham's statements about the "intensity, persistence, and limiting effects" of her symptoms not credible to the extent they conflicted with medical evidence or her self-reported activities of daily living. Id. at 31. The ALJ characterized Cunningham's subjective complaints as indicating that she experienced "totally debilitating symptomatology," id., but explained how other evidence contradicted the claim. Id. at 31-34. We find the ALJ's explanation

---

[6] Cunningham highlights the fact that she was on numerous medications in order to "function on a minimal level." The ALJ acknowledged the list of medications provided by Cunningham and addressed her complaint that they make her dizzy, sluggish, and tired, noting that it was contradicted by reports from several doctors indicating that Cunningham had said she was managing with her medications. S.A. at 32-33. The ALJ's handling of this issue comports with 20 C.F.R. § 404.1529(c)(3), which allows consideration of the effect of a claimant's medication so long as it is consistent with the objective medical evidence.

12

persuasive and grounded in the record, and will not repeat her extensive discussion here. In reaching this conclusion, we observe that Cunningham has not cited any objective medical evidence (other than the opinion of her psychologist which is discussed in Section C, infra) to support her claim that her pain and other symptoms are more severe than the ALJ found them to be. Accordingly, we conclude that it was appropriate for the ALJ to discount any subjective complaints that were contradicted by medical evidence or Cunningham's own statements. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000) (allegations of pain must be consistent with objective medical evidence and an ALJ must explain the reasons for rejecting such testimony).

In sum, we conclude that there is substantial evidence to support the ALJ's determination that Cunningham's physical and mental impairments did not match or equal the criteria for the relevant listed impairments and thus did not entitle her to a finding of disability at step 3 of the sequential analysis.

**B.     The ALJ Properly Assessed Cunningham's Ability to Engage in Activities of Daily Living**

Cunningham argues that the ALJ should not have used her ability to perform some minimal activities of daily living to determine that she was able to work full time. This argument challenges the ALJ's determination at step 4 of the sequential analysis, i.e., that Cunningham has the residual functional capacity to perform light work subject to some limitations. Residual functional capacity is what a claimant can still do despite his or her limitations, and it is assessed using all relevant evidence from the record, including

statements from medical sources and a claimant's own description of his or her limitations. 20 C.F.R. § 404.1545(a)(1), (3). Thus, it is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. See Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002). Furthermore, the ALJ was required to consider Cunningham's activities of daily living to assess the severity of her mental impairments, see 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A), (C)(1), and was permitted to consider them to evaluate the credibility of Cunningham's subjective complaints of pain and other symptoms. See 20 C.F.R. § 404.1529(c)(3).

Although Cunningham cites several decisions in support of her argument,[7] none of them are from this Court or binding upon us. Furthermore, those decisions do not aid Cunningham because they do not hold that ALJs are prohibited from considering a claimant's activities of daily living. Instead, the cases involved situations where an ALJ accorded too much weight to a claimant's activities of daily living compared to other evidence in the record. To the extent that Cunningham might be making such an argument here, we note that the ALJ's residual functional capacity determination in this case was based on the medical evidence relating to her impairments, as well as her activities of daily living. S.A. at 27-30.

---

[7] Tang v. Apfel, 205 F.3d 1084 (8th Cir. 2000); Eback v. Chater, 94 F.3d 410 (8th Cir. 1996); Lester v. Chater, 81 F.3d 821 (9th Cir. 1995); and Peterman v. Chater, 946 F. Supp. 734 (N.D. Iowa 1996).

**C.    The ALJ Gave Sufficient Weight to the Opinion of Cunningham's Psychologist**

Cunningham contends that the ALJ disregarded the opinion of her psychologist, Michael Moran, that she was unable to work. This opinion was expressed in three documents in the record. See A.R. at 379-81, 406. The ALJ accorded diminished weight to Moran's opinion because it was inconsistent with other evidence from him and from the record as a whole, and because his opinion regarding Cunningham's migraine headaches was beyond his area of expertise. S.A. at 35.

As a general rule, "[t]reating physician's reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, a treating physician's opinion may be rejected on the basis of contradictory medical evidence, or may be accorded less weight depending upon the extent to which a supporting explanation is provided for the opinion. Id. In addition, an ALJ does not give any "special significance" to a physician's opinion that a patient is unable to work because the agency is responsible for determining whether a claimant meets the statutory definition of disability. See 20 C.F.R. § 404.1527(d)(3).

Here, Moran's opinion that Cunningham was unable to work full time was not entitled by regulation to any special significance. There is little to his opinion other than statements that Cunningham suffers from severe migraines, her concentration and

15

attention span waiver, and she is "quick to anger and has violent type thoughts." S.A. at 380. There is virtually no supporting explanation in the letters for these statements, which by itself would justify the ALJ's decision to accord them little weight. Furthermore, Moran's opinion of the severity of Cunningham's mental limitations, which one may infer from his opinion that they would prevent her from working, is inconsistent with his treatment notes. See A.R. at 300, 379, 383-406. His opinion is also inconsistent with records from Cunningham's psychiatrists, id. at 296-98, 409-15, and with the report from the state agency consultant who evaluated the record. Id. at 325-337. As for migraines, the ALJ explained that Moran is a psychologist, not a medical doctor, and that the issue is therefore outside the area of his expertise. S.A. at 35. We therefore conclude that the ALJ's decision to accord diminished weight to Moran's opinion is consistent with the regulations and our prior decisions and is supported by substantial evidence.

### D. The ALJ Did Not Disregard the Vocational Expert's Testimony

Cunningham claims that the vocational expert testified that she would be unable to work due to her impairments and that the ALJ disregarded that testimony when she determined that Cunningham could perform light work subject to certain limitations. This reflects a mistaken understanding of the proceedings. During the hearing, the ALJ posed several hypothetical questions to the vocational expert about the type of work an individual with varying limitations could perform. The ALJ first asked the vocational expert whether a person with Cunningham's education, training, and work experience,

16

who was limited to medium work, simple, repetitive tasks and decisions, and few interactions with supervisors, colleagues, and the public could perform Cunningham's past work (i.e., licensed practical nurse). The expert said no. A.R. at 48-49. Consistent with this testimony, the ALJ found that Cunningham could not perform her past relevant work. S.A. at 35. But the ALJ went on to pose a hypothetical that included all of Cunningham's limitations, i.e., light work and the non-exertional limitations concerning tasks, interactions, and environmental conditions. A.R. at 50-51. The vocational expert testified that an individual with those limitations could perform jobs such as a racker in a bakery, a bagger in a dry cleaner or laundry, and a small parts assembler. Id. Accordingly, the ALJ found that Cunningham could perform those jobs, which exist in the national economy, and that she was therefore not disabled. S.A. at 36-37.

Cunningham does not appear to challenge the sufficiency of the ALJ's hypothetical, and the record indicates that it was accurately tailored to her situation and included all limitations that were supported by the evidence. See Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205-06 (3d Cir. 2008) (observing that ALJs often seek advisory testimony from a vocational expert and that an ALJ must pose hypotheticals that accurately portray a claimant's impairments.) Cunningham only argues that what she is to avoid – fumes, odors, dust, gases, chemical irritants, poor ventilation, temperature extremes, excessive noise and vibration, and proximity to co-workers and the public – must certainly exist in the jobs the ALJ found she could perform. This is merely

17

speculation,[8] whereas the ALJ was entitled to use the vocational expert's testimony. <u>See</u> 20 C.F.R. § 404.1566(e).

**E.      The District Court Properly Refrained from Considering the Evidence Cunningham Submitted to the Appeals Council**

Cunningham submitted a lengthy statement to the Appeals Council when she appealed the ALJ's decision, in which she explained that she does not care for her special- needs daughter, is less able to care for herself than the ALJ determined, must take many medications to be able to do minimal activities, is in financial distress, and did not go on the cruise because of a fight with her friend. Cunningham also submitted several documents in support of her statement, including an excerpt of school records for her daughter, a letter from the cruise line, and termination notices from utility companies. She faults the District Court for failing to address this evidence, but the District Court was not permitted to do so. Even though "evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals council has denied review." <u>Matthews v. Apfel</u>, 239 F.3d 589, 593 (3d Cir. 2001). In addition, it would have been proper for the District Court to remand the case based on that evidence only if Cunningham had shown good cause for not presenting it to the ALJ, which she has not

---

[8] Cunningham's reliance on the descriptions of the jobs in the Dictionary of Occupational Titles does not aid her argument. The descriptions indicate that all three of the jobs are listed as light work and do not contain any information about environmental conditions associated with the jobs.

18

done.  Id. at 594.  Accordingly, the District Court committed no error in regard to the additional evidence.

Finally, Cunningham requests that we consider the fact that she has been awarded disability benefits as of August 30, 2008 – the day after benefits were denied in the matter presently before us.  But the fact that another ALJ found Cunningham to be disabled does not, in itself, warrant remand or reversal.  See Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652-53 (6th Cir. 2009).  Remand or reversal based on the subsequent favorable decision would be appropriate only if that decision was based on new and material evidence that Cunningham had good cause for not raising in the prior

proceeding. <u>Id.</u> at 653. Cunningham has not presented any such evidence.

## VI.

Appellee's motion for leave to file a supplemental appendix is granted. For the reasons presented herein, we will affirm the decision of the District Court that the ALJ's determination is supported by substantial evidence.