R. BARCLAY SURRICK, J.
AND NOW, this 14th day of February, 2018, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review, defendant's Response to Request for Review of Plaintiff, and plaintiff's reply thereto, and after review of the Report and Recommendation of *349 United States Magistrate Judge Thomas J. Rueter, it is hereby
ORDERED
1. The Report and Recommendation is APPROVEDand ADOPTED.
2. Plaintiff's Request for Review is GRANTED, and the decision of the Commissioner of the Social Security Administration is REVERSEDto the extent that the matter is REMANDEDto the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with United States Magistrate Judge Thomas J. Rueter's Report and Recommendation.
3. Judgment is entered in favor of plaintiff, reversing the decision of the Commissioner for the purpose of this remand only.
REPORT AND RECOMMENDATION
THOMAS J. RUETER, United States Magistrate Judge
Plaintiff, Thomas Bruce, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").
Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), defendant filed a Response to Plaintiff's Request for Review ("Def.'s Br.") and plaintiff filed a reply thereto ("Pl.'s Reply"). For the reasons set forth below, this court recommends that plaintiff's Request for Review be GRANTED .
I. FACTUAL AND PROCEDURAL HISTORY
In July 2012, plaintiff filed applications for SSI and disability insurance benefits ("DIB") under Title II of the Act alleging disability beginning March 3, 1997. (R. 173-86.) The claims were denied initially and a request for a hearing was filed timely. (R. 109-20.) A hearing was held on March 12, 2014, before Administrative Law Judge ("ALJ") Frederick Timm. (R. 35-67.) Plaintiff, who was represented by counsel, appeared and testified. Steven H. Gumerman, Ph.D., a vocational expert ("VE"), also appeared and testified. (R. 62-66.) In a decision dated June 10, 2014, the ALJ found that plaintiff was not disabled under the Act. (R. 16-34.) Plaintiff filed a request for review of the decision of the ALJ that was denied and the ALJ's decision became the final decision of the Commissioner. (R. 1-15.)
In October 2014, plaintiff sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), requesting review of the Commissioner's denial of plaintiff's claim for SSI only; plaintiff did not pursue the denial of his claim for DIB. Plaintiff alleged that the ALJ erred in finding plaintiff's major depressive disorder did not meet or equal the requirements of Listing 12.04C(1), 20 C.F.R. Part 404, Subpt. P, App. 1 and that the ALJ erred by adopting the opinion of the VE which was based upon a faulty hypothetical. In a Report and Recommendation dated February 25, 2016, the undersigned recommended that plaintiff's request for review be granted and the case be remanded to the Commissioner for further review. See R. 1594-1615. In response to the issues raised by plaintiff in his request for review, the court first found that the ALJ did not properly analyze the evidence of record when he determined that plaintiff's depressive disorder did not meet the severity of Listing 12.04C(1) because the ALJ did not properly consider whether the evidence of hospitalizations constituted episodes of decompensation under the regulations. (R. 1602-09.) Furthermore, with respect to plaintiff's argument that the ALJ erred when he found that the record contained *350 no evidence of episodes of decompensation while plaintiff was "clean and sober," the court noted that a "clean and sober" standard is not congruent with the Commissioner's regulations. (R. 1609-11.) Accordingly, the court found that to the extent the ALJ relied upon plaintiff's use of drugs and alcohol as a basis for denying his claim for benefits, the ALJ had an obligation to engage in the proper analysis under the Act and its regulations. See id.; 42 U.S.C. § 1382c(a)(3)(J) ; 20 C.F.R. § 416.935. Moreover, with respect to plaintiff's claim that that the ALJ erred at step five of the sequential analysis by failing to incorporate all of plaintiff's credibly established limitations in the hypothetical questions posed to the VE, the court determined that the ALJ's failure to properly consider the evidence concerning plaintiff's mental impairment impacted the ALJ's determinations regarding plaintiff's RFC. (R. 1611-12.) As such, the court recommended that when the ALJ reevaluated the evidence of plaintiff's mental impairment, the ALJ should reassess plaintiff's RFC and his ability to perform work given the impairments.
By Order dated March 11, 2016, the Report and Recommendation was approved and adopted and the matter was remanded for further evaluation. (R. 1615.) On October 9, 2015, the Appeals Council remanded the claim to an ALJ for "further proceedings consistent with the order of the court." (R. 1616-19.)
The court notes that plaintiff filed subsequent applications for DIB and SSI on December 16, 2014. See R. 1793-1816. Upon review of these applications in January 2015, plaintiff was awarded SSI benefits at the initial level. See R. 1622-29. Plaintiff was found to be disabled as of December 16, 2014.
Pursuant to the Appeals Council remand order on the present applications for benefits, a second hearing was held before ALJ Timm on October 31, 2016. (R. 1534-63.) Plaintiff, represented by counsel, appeared and testified, as did VE Christine Slusarski. In a decision dated March 6, 2017, the ALJ found that plaintiff was not disabled under the Act. (R. 1508-33.) The ALJ made the following findings:
1. The claimant met the insured status requirements of the Social Security Act through June 30, 2006.
2. A decision is deferred as to whether the claimant engaged in substantial gainful activity from March 3, 1997, the alleged onset date, through December 15, 2014, the day prior to the date that the claimant was found disabled in the subsequent favorable determination issued on January 22, 2015 ( 20 CFR, 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq. ).
3. From March 3, 1997, through December 15, 2014, the claimant had the following severe impairments: mild-to-moderate osteoarthritis of the left ankle status post fracture and open reduction internal fixation ; mild degenerative disc disease of the lumbar spine status post fusion; dilated aortic root/hypertension ; obstructive sleep apnea (OSA); asthma ; and major depressive disorder (MDD); and polysubstance dependence in partial remission ( 20 CFR 404.1520(c) and 416.920(c) ).
4. From March 3, 1997, through December 15, 2014, the claimant's impairments, including the substance use disorder, meet section 12.04 (Depressive, bipolar and related disorders) of 20 CFR Part 404, Subpart P, Appendix 1 ( 20 CFR 404.1520(d) and 416.920(d) ).
5. From March 3, 1997, through December 15, 2014, if the claimant stopped the substance use, the remaining *351 limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
6. From March 3, 1997, through December 15, 2014, if the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 ( 20 CFR 404.1520(d) and 416.920(d) ).
7. From March 3, 1997, through December 15, 2014, if the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: cannot operate foot controls with one lower extremity; must never climb ladders, ropes, or scaffolds; can perform the other postural maneuvers on occasion; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and environmental irritants. From a mental standpoint the claimant is limited to unskilled tasks that are goal-oriented rather than production-paced; no significant interaction with the general public; no more than occasional interaction with supervisors and co-workers; and requires a stable workplace, defined as involving few if any changes of setting, processes, and tools.
8. The claimant has no past relevant work ( 20 CFR 404.1565 and 416.965 ).
9. The claimant was born on March 16, 1962 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date ( 20 CFR 404.1563 and 416.963 ). On March 15, 2012, the claimant's age category changed to an individual closely approaching advanced age ( 20 CFR 404.1563 and 416.963 ).
10. The claimant has at least a high school education and is able to communicate in English ( 20 CFR 404.1564 and 416.964 ).
11. Transferability of job skills is not an issue because the claimant does not have past relevant work ( 20 CFR 404.1568 and 416.968 ).
12. From March 3, 1997, through December 15, 2014, if the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform ( 20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966 ).
13. With respect to the period from March 3, 1997, through December 15, 2014, the substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use ( 20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935 ). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from March 3, 1997, the alleged onset date, through December 15, 2014, the day prior to the date that the claimant was found disabled in the *352 subsequent favorable determination issued on January 22, 2015.
(R. 1514-26.)
Plaintiff did not file a request for review with the Appeals Council, see Def.'s Br. at 3, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). Once again, plaintiff seeks review of the denial of his claim for SSI benefits only. See Pl.'s Br. at 2. Accordingly, the court will not address the claim for DIB.
When remanding the present case for further review, the Appeals Council stated that it neither affirmed nor reopened the State agency award of benefits on plaintiff's subsequent application, and directed that the period for review before the ALJ was limited to the period prior to December 16, 2014. See R. 1512, 1618. In his decision, the ALJ addressed plaintiff's subsequent, successful SSI claim as follows:
In that more than two years have passed since the State agency issued a favorable determination on January 22, 2015, finding the claimant disabled beginning December 16, 2014, based on the subsequent claim for Title XVI disability benefits filed on December 16, 2014, and there is no evidence of fraud or similar fault, the undersigned Administrative Law Judge will not reopen this favorable determination ( 20 CFR 416.1487 and 416.1488 ). The claimant is alleging disability since March 3, 1997. As a result, this decision is limited to the closed period from March 3, 1997, the alleged onset date, through December 15, 2014, the day prior to the date that the claimant was found disabled in the favorable determination issued on January 22, 2015.
(R. 1512.)[1]
II. STANDARD OF REVIEW
The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g) ), cert. denied, --- U.S. ----, 134 S.Ct. 1274, 188 L.Ed.2d 311 (2014) ; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) ). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum v. Sec'y of U.S. Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ). As the Third Circuit has stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse ... those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).
To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason *353 of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i).
The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 416.920.[2] This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. See id. The claimant bears the burden of establishing steps one through four of the five-step evaluation process, while the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other jobs existing in large numbers in the national economy. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).
III. BACKGROUND
At the administrative hearing on October 31, 2016, the ALJ noted that the evidence from the prior administrative hearing remained of record for his consideration. (R. 1537.) As such, the ALJ sought "updated testimony" from plaintiff. (R. 1538.)
At the time of the October 2016 administrative hearing, plaintiff had been living in an apartment in Wayne, Pennsylvania with a friend for the past three to four months. (R. 1547.) Prior to that time, plaintiff rented a room in a friend's home and also lived with his sister for a time. (R. 1548.) Plaintiff has two children; he had not seen them in person "in a little bit" but he paid child support. (R. 1551-52.) In the past, plaintiff helped his brother perform "odd jobs," but plaintiff indicated that he does not have the necessary energy to perform work. (R. 1552.) Plaintiff does not have a driver's license. (R. 1553.)
With respect to his mental impairments, plaintiff explained that since the date of the first administrative hearing, his major depressive disorder and anxiety disorder have remained "about the same." Id. Plaintiff described sleep difficulties due to depression and sleep apnea. (R. 1539-40.) Plaintiff also indicated that he does not feel motivated and has experienced a "loss of interest in things." Id. Plaintiff confirmed that he continues to take a variety of psychotropic medication as prescribed by Laszlo Gyulai, M.D., the staff psychiatrist at the Department of Veterans Affairs. Id. Plaintiff confirmed that his medication regimen includes Trazanol, Aripiprazole, Uprocrean, and Nirtazapine.
*354 (R. 1539.) Plaintiff is also prescribed medication for pain. (R. 1543.)
With respect to social interactions, plaintiff stated that his relationship with his older sister and mother had "improved a little bit" because they now "understand [more] what [plaintiff is] going through." (R. 1540.) However, plaintiff explained such improvement pertained only to his relationship with his older sister and mother because plaintiff has "no friends that [he goes] out with or talk[s] to." Id. Plaintiff also explained that, due to anxiety, he has difficulty being in crowds or utilizing public transportation. (R. 1541.) In addition, plaintiff described problems with concentration and focus. Id. Plaintiff represented that he continues to have symptoms of depression and anxiety even when he is drug free. (R. 1543.)
Plaintiff stated that he had not used substances "for at least the last six months" and that he "had a beer or two." Id. Plaintiff indicated that he received out-patient mental health services through the Veterans Administration, but had been unable to get to the VA in Philadelphia because he was living in Wayne and had difficulty arranging transportation to the Philadelphia VA facilities. (R. 1550-51.) Plaintiff moved to Wayne because the person with whom he was previously living was an alcoholic and the environment was not safe for plaintiff. (R. 1551.) The friend that plaintiff lived with at the time of the administrative hearing also was a veteran and plaintiff indicated that he felt "a little bit more relaxed and comfortable around other veterans." Id.
With respect to his physical abilities, plaintiff had spinal fusion surgery in 2000. (R. 1541-42.) He continues to have pain in his left leg due to a herniated disc that caused nerve damage. (R. 1542.) In 2006, plaintiff broke his ankle; to repair the break, surgeons inserted five screws and a plate. Id. Plaintiff stated that he remains unable to pivot or step backward due to continued ankle pain and weakness. Id. Plaintiff also described arthritis in his left ankle, hips, elbow, back and neck. (R. 1544.) Plaintiff was advised that he has nerve damage in his left arm; plaintiff explained that this causes a tingling sensation in his left arm to his thumb. (R. 1549.) Plaintiff sometimes utilizes a cane, such as when he climbs stairs, but was advised by his doctor that he should not "depend on it all the time." (R. 1544-45.) Plaintiff also has asthma, for which he was hospitalized on two separate occasions in the year prior to the administrative hearing. (R. 1548-49.) In addition, plaintiff experienced recurrent syncope and was hospitalized to determine why he was "passing out." (R. 1549.) Plaintiff has a c-pap device for obstructive sleep apnea, but acknowledged that he does not always use the device because it is ill-fitting. (R. 1545-47.)
With respect to the vocational testimony, the ALJ first indicated that he would "rely on Dr. Gumerman's testimony [from the first administrative hearing] that there was past work here as a Sheer Operator and a Handheld Crane Operator, and that these were heavy and medium, respectively, with no transferable skills to sedentary exertion." (R. 1555.) The ALJ then stated that he would pose hypothetical questions to VE Slusarski about other work that the hypothetical individual could perform. Id. The ALJ stated that he would "recite the RFC I reached previously for you" and "I am going to ask about the impact of reduction in standing and walking mentioned by counsel." Id. The ALJ stated:
The RFC I reached previously was for light exertion, generally, no foot controls with one lower extremity, meaning the left lower extremity, not that, I don't think it matters, but-never to climb ladder, rope, scaffold. The remaining postural exertion and the remaining postural maneuvers occasional. Needing to *355 avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity and environmental irritants.
And then in the mental domain, limited to unskilled tasks, to goal oriented, rather than production paced tasks, no significant interaction with the general public, no more than occasional interaction with supervisors and coworkers, and requiring stable work place, meaning few if any changes of setting, processes and tools.
(R. 1555-56.) Plaintiff's counsel then questioned the ALJ whether the use of the RFC and hypothetical questions fashioned at the first administrative hearing would be in contravention of the court's remand directive. See R. 1556-57. In response, the ALJ indicated that he would "again consider all hypotheticals presented, both by myself in the previous hearing, by you on cross-examination to Dr. Gumerman. And now I'm going to present an additional hypothetical to Ms. Slusarski." (R. 1557.) The ALJ then asked the VE to consider what impact, if any, a "reduction to standing and walking three to four hours of the eight-hour work day" would have on the light occupations of sorter, packer and laundry worker. (R. 1558.) VE Slusarski opined that such reduction would not eliminate the identified occupations. Id. Once again, plaintiff's attorney requested clarification from the ALJ whether the ALJ was presenting to the VE a new hypothetical question, or whether the ALJ was relying upon the same question from the prior hearing. See R. 1558-61. After discussing this court's remand recommendation and certain of the opinion evidence of record, the ALJ indicated that he would not pose any further questions to VE Slusarski. The ALJ stated:
All right. So do you have any questions for Ms. Slusarski? I, essentially, am going to rely on Dr. Gumerman's testimony. Because on further review, I think it really did cover all of the relevant hypothetical limitations.
(R. 1562.)
IV. DISCUSSION
The Social Security Act was amended in 1996 to preclude an award of benefits if drug addiction or alcoholism ("DAA") would be "a contributing factor material to the Commissioner's determination that the individual is disabled." See 42 U.S.C. § 1382c(a)(3)(J). The Commissioner's regulations provide that if a claimant is found disabled and the record contains medical evidence of DAA, the ALJ must determine whether DAA is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). The regulations further state that in determining whether DAA is a contributing factor material to an individual's disability, the "key factor" is "whether we would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). To make this determination, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(2). The ALJ must then determine whether any or all of the claimant's remaining limitations would be disabling. Id.
On remand, the ALJ in the case at bar evaluated plaintiff's claim, considering whether substance use is a contributing factor material to the determination of disability. In so doing, the ALJ found that the evidence of record establishes plaintiff had the following severe impairments from March 3, 1997 through December 15, 2014: mild-to-moderate osteoarthritis of the left ankle status post fracture and open reduction internal fixation ; mild degenerative disc disease of the lumbar spine status post fusion; dilated aortic root/hypertension ; obstructive sleep apnea (OSA); asthma ; major depressive disorder (MDD); and polysubstance dependence in *356 partial remission, impairments which do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1515.) The ALJ further found that, from March 3, 1997, though December 15, 2014, if plaintiff stopped the substance use, the remaining limitations would cause more than minimal impact on plaintiff's ability to perform basic work activities; therefore, plaintiff would continue to have a severe impairment or combination of impairments. (R. 1518.) Ultimately, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work and that there would be a significant number of jobs in the national economy that plaintiff could perform. (R. 1520, 1525.)
Plaintiff contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff argues that the ALJ improperly determined that substance use was a contributing factor material to the determination of disability, and that the ALJ erred in assessing plaintiff's RFC because the ALJ relied upon VE testimony that was based upon an incomplete hypothetical question. See Pl.'s Br. at 9-21; Pl.'s Reply at 3-10. Both of these assertions relate to the ALJ's RFC determination and the mental health related determinations therein. Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 4-13.) The court will address plaintiff's second argument first.
A. Mental RFC/Hypothetical to the VE
The Commissioner's regulations provide that if a claimant's impairments do not meet or equal a listed impairment, the RFC assessment is used at step four of the sequential evaluation process to determine if a claimant can do his past relevant work and at step five to determine if the claimant can adjust to other work. See 20 C.F.R. §§ 416.920(e), 416.960, 416.962. ALJs frequently rely upon VE testimony as part of the step four and step five analysis.[3]
*357 In the present case, plaintiff argues that the ALJ erred by not properly conveying to the VE all of the credibly established limitations that the ALJ himself found to be present. (Pl.'s Br. at 16-21; Pl.'s Reply at 3-6.) It is well-established that the ALJ must include in the hypothetical to the VE all of a claimant's limitations which are supported by the medical record. Plummer, 186 F.3d at 431 ; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). However, an ALJ need not "submit to the [VE] every impairment alleged by a claimant." Zirnsak v. Colvin, 777 F.3d 607, 615 (3d Cir. 2014) (emphasis in original) (citing Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) ). An ALJ is only required to submit credibly established limitations. Id. If a limitation "is supported by some medical evidence but controverted by other evidence in the record, it is within the ALJ's discretion whether to submit the limitation to the VE." Id. A VE's testimony in response to a hypothetical "that fairly set forth every credible limitation established by the physical evidence," may be relied upon by the ALJ as substantial evidence. Plummer, 186 F.3d at 431.
Furthermore, the Third Circuit has explained that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8. The court stated:
That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.
Id. Here, plaintiff argues that the ALJ relied upon the RFC that he assessed in 2014, but in so doing, failed to account for additional functional limitations that the ALJ assessed in his March 2017 analysis. See Pl.'s Br. at 16-21. Thus, the underlying argument is that the ALJ's ultimate finding rests on an RFC assessment that overstates plaintiff's abilities. Defendant contends that substantial evidence supports the ALJ's RFC assessment. (Def.'s Br. at 9-11.)
At the first administrative hearing on March 12, 2014, the ALJ asked the VE to consider a hypothetical individual of plaintiff's age, education, and work experience[4] who was generally capable of light work, with the following additional limitations: "[n]o foot controls with one lower extremity, never to climb ladder, rope, scaffold. Other postural maneuvers, occasional, must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity and environmental irritants. Further limited to unskilled tasks, limited to goal oriented rather than production paced tasks, no significant interaction with the general public, only occasional interaction with supervisors and coworkers, and does require a stable work place and few if any changes of setting, processes and tools." (R. 62-63.) The VE opined that such individual *358 could perform the following light, unskilled jobs: sorter, packer, and laundry worker.[5] (R. 63.)
Additionally, the ALJ asked the VE to consider a second hypothetical question which contemplated the individual as described by the ALJ in the first hypothetical question, but who was further limited in that he could stand and walk for three to four hours in an eight hour workday. Id. The VE opined that such individual would not be able to perform the identified jobs because the additional limitations "would get us down as close to sedentary as we might be." (R. 64-65.) Upon questioning from plaintiff's attorney, the VE further opined that if the hypothetical individual were limited to sitting for no more than one half-hour and to standing for no more than one hour in an eight hour workday, such individual could not perform full-time work. (R. 66.)
In his June 10, 2014 decision, the ALJ determined at step three of the sequential analysis that plaintiff did not have an impairment or combinations of impairments that meets or medially equals the severity of one of the listed impairments. (R. 22.) In so finding, the ALJ considered the paragraph B criteria of Listing 12.04 and determined that plaintiff had mild restrictions in activities of daily living, moderate limitations in social functioning, moderate limitations with regard to concentration, persistence and pace, and had experienced no episodes of decompensation of extended duration. See R. 22-23. The ALJ detailed plaintiff's RFC as follows:
[Plaintiff] has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot operate foot controls with one lower extremity; must never climb ladders, ropes, or scaffolds; can perform the other postural maneuvers on occasion; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and environmental irritants. From a mental standpoint the claimant is limited to unskilled tasks that are goal-oriented rather than production-paced; no significant interaction with the general public; no more than occasional interaction with supervisors and co-workers; and requires a stable workplace, defined as involving few if any changes of setting, processes, and tools.
(R. 23-24.) The ALJ also found that plaintiff could not perform his past relevant work, but that based on the VE's testimony, considering plaintiff's age, education, work experience, and RFC, plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 28-29.)
In the interim between the ALJ's first and second decisions, the regulations setting forth the criteria for evaluating mental disorders were amended, effective January 17, 2017. See 20 C.F.R. § 416.920a.[6]
*359 At the time of the ALJ's June 10, 2014 decision, the regulations directed the ALJ to evaluate a claimant's functional limitations in the following four functional areas when considering Listing 12.04: "activities of daily living"; "social functioning"; "concentration, persistence, or pace"; and "episodes of decompensation." See 20 C.F.R. § 416.920a(c)(3) (version effective June 13, 2011 to January 16, 2017).[7] However, at the time of the ALJ's March 9, 2017 decision, the regulations directed the ALJ to consider the following four functional areas when considering Listing 12.04: "understand, remember, or apply information"; "interact with others"; "concentrate, persist, or maintain pace"; and "adapt or manage oneself." See 20 C.F.R. § 416.920a(c)(3) (version effective January 17, 2017 to March 26, 2017).[8]
*360 As noted supra, in the March 9, 2017 decision, the ALJ explicitly found at step three of the sequential analysis that, even if plaintiff stopped the substance use, in terms of the paragraph B criteria of Listing 12.04, plaintiff had moderate limitations in the four functional areas of "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting or maintaining pace," and "adapting or managing oneself." (R. 1519.) However, the ALJ applied the same RFC that he assessed in 2014. Compare R. 23-24 with R. 1520. In addition, at step five of the sequential analysis, the ALJ concluded "[b]ased on the ... [VE's testimony from the March 12, 2014 hearing] that, if the claimant stopped the substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. 1526.) As plaintiff correctly points out, the hypothetical questions posed to the VE in 2014, and thereby the 2014 RFC, did not address or contemplate a limitation comparable to moderate limitations in the functional areas of "understanding, remembering, or applying information"[9] or "adapting or managing oneself"[10] because *361 those functional areas did not exist in the Social Security Administration's regulations until 2017.
The law of this Circuit provides that a VE's testimony may be relied upon at step five of the sequential analysis to establish the existence of jobs in the national economy consistent with a claimant's RFC only if the question posed to the VE accurately portrays the claimant's individual physical and mental impairments. Burns, 312 F.3d at 123 (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984) ). "Where a credibly established limitation is not included, there is a danger that the [VE] will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation." Benyak v. Colvin, 2014 WL 4450144, at *9 (W.D. Pa. Sept. 10, 2014) (citing Ramirez v. Barnhart, 372 F.3d 546, 552-55 (3d Cir. 2004) ). Thus, a hypothetical question posed to a VE must reflect all of the claimant's limitations that are supported by substantial evidence, if the VE's opinion is to be valid. See Burns, 312 F.3d at 123 ("Where there exists in the record undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence.").
Here, the ALJ based his step five determination that plaintiff is capable of making an adjustment to work that exists in significant numbers in the national economy in part on the VE's 2014 testimony. See R. 1526. However, the hypothetical question posed to the VE in 2014 did not convey all of the functional limitations that the ALJ deemed established in 2017. Therefore, because the moderate limitations in "understanding, remembering, or applying information" and "adapting or managing oneself" were not presented to the VE in 2014, the VE's 2014 testimony cannot be relied upon in 2017 to establish the existence of jobs in the national economy consistent with plaintiff's RFC. See, e.g., Tung Thinh Lam v. Astrue, 2011 WL 1884006, at *14 (E.D. Pa. Mar. 31, 2011) ("Until the ALJ forecloses the possibility that the VE could have changed his testimony if the ALJ had included limitations pertinent to the ALJ's own finding of 'moderate' limitations in social functioning, the VE's answer to the hypothetical as posed cannot be said to constitute substantial evidence upon which the ALJ can properly rely."), Report and Recommendation approved and adopted, 2011 WL 1882639 (E.D. Pa. May 17, 2011).
In addition, the court cannot discern from a reading of the transcript of the October 31, 2016, administrative hearing whether the ALJ considered the limitations in "understanding, remembering, or applying information" and "adapting or managing oneself" when contemplating the VE testimony. There appeared to be some confusion concerning the testimony of the VEs at the first and second hearing. See R. 1556-62. For example, at the October 2016 hearing, plaintiff's counsel repeatedly asked the ALJ for clarification on the questions posed to the VE and whether the hypothetical questions and RFC assessment were in accordance with the court's directives on remand, particularly with respect to plaintiff's mental impairments. See id. Ultimately, that ALJ stated: "So do you have any questions for Ms. Slusarski? I, essentially, am going to rely on Dr. Gumerman's testimony. Because on further review, I think it really did cover *362 all of the relevant hypothetical limitations." (R. 1562.) However, the ALJ's statement that "it really did cover all of the relevant hypothetical limitations" sheds no light on the issue presently before the court-whether the mental limitations contained in the ALJ's RFC adequately address moderate limitations in "understanding, remembering, or applying information" or "adapting or managing oneself."[11]
Thus, the 2014 VE testimony is not substantial evidence on which the ALJ may base his RFC because the 2014 VE testimony does not incorporate all of the functional limitations that the ALJ himself found present even while plaintiff engages in substance use. In the 2014 decision and the 2017 decision, the ALJ expressly relied on the testimony of the VE from the 2014 hearing to identify representative unskilled jobs that plaintiff could perform within the limitations of his RFC. (R. 62-66, 1555-62). Because the ALJ failed to include all of plaintiff's credibly established limitations in the hypothetical used to support his step five determination, it was not supported by substantial evidence. See Ramirez, 372 F.3d at 552 ; Chrupcala, 829 F.2d at 1276. Thus, remand is required to allow for reassessment of the RFC and hypothetical questions, or for clarification as to the rationale for not including any specific limitations in the RFC and the hypothetical questions to the VE that address moderate limitations in the areas of "understanding, remembering, or applying information" and "adapting or managing oneself."[12]
B. Materiality of DAA
Social Security Ruling 13-2p explains the procedure to be used in determining DAA materiality, delineating a series of six steps. See SSR 13-2p, Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA), 2013 WL 621536, at *5-8 (Feb. 20, 2013).[13] Of import to the case at bar, at the sixth step, the adjudicator must determine whether the claimant's other impairment(s) would improve to the point of nondisability in the absence of DAA. Id. at *5, *7-9.
The guidance also indicates that the materiality determination must be based on evidence. Id. at *10. With respect to mental impairments, SSR 13-2-p acknowledges that many people with DAA have co-occurring mental disorders and states that to "support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we *363 do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder." Id. at *9.
Plaintiff contends that the ALJ erred as a matter of law when he found that substance use is material to the determination of disability because plaintiff's impairments would improve if he stopped substance use, pointing to several alleged errors in support of this argument. (Pl.'s Br. at 9-16; Pl.'s Reply at 7-10.) For example, plaintiff avers that the ALJ improperly discounted probative opinion evidence. See Pl.'s Br. at 11-12; Pl.'s Reply at 7-8.[14] Plaintiff's argument is essentially an attack on the ALJ's RFC assessment and the court already has determined supra that the ALJ's RFC assessment is incomplete and warrants further analysis. A remand may produce different results on plaintiff's application, making discussion of this claim moot. See Steininger v. Barnhart, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (concluding that the ALJ's hypothetical was deficient and the vocational expert's answer to it does not constitute substantial evidence for the ALJ's *364 decision and declining to address plaintiff's other arguments for remand, "as the ALJ's findings may be revised in any decision issued following the new hearing"). See also LaSalle v. Comm'r of Soc. Sec., 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011) (remanding for the ALJ's failure to consider and analyze all relevant medical evidence regarding plaintiff's mental impairments and declining to examine plaintiff's additional claims because a "remand may produce different results on these claims, making discussion of them moot"); Nieves v. Astrue, 2010 WL 629831, at *7 (E.D. Pa. Feb. 19, 2010) (same); Watson v. Astrue, 2009 WL 678717, at *6 (E.D. Pa. Mar. 13, 2009) (declining to address plaintiff's remaining claims "until the basis for the ALJ's ruling is clarified through remand"). As such, the court will not address this claim in detail.
Of note, plaintiff argues that the ALJ erred in his consideration of the opinion evidence, inter alia, by attributing little weight to the opinion of plaintiff's treating psychiatrist, Dr. Gyulai of the VA Medical Center who opined in March 2014 that plaintiff "has major depression when drug free."[15] See R. 1505, 1523; Pl.'s Br. at 10-12, 16; Pl.'s Reply at 7-8. Generally, the regulations dictate that an ALJ must give medical opinions the weight he deems appropriate based on factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the record as a whole. See 20 C.F.R. § 416.927. An ALJ should give "treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Brownawell v. Comm'r Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citation omitted). An ALJ shall give a treating physician's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2), (3).
If the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ). That is, a treating source's opinion may be rejected "on the basis of contradictory medical evidence," Plummer, 186 F.3d at 429, or if it is unsupported by sufficient clinical data, Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). An ALJ may not reject a treating physician's opinion based upon his own credibility judgments, speculation or lay opinion. Morales, 225 F.3d at 317.
It is unclear from the ALJ's analysis in the case at bar whether these standards were met. The court notes that certain of the factors cited by the ALJ in discounting the treating physician's opinions undermine his analysis. For example, inter alia, the ALJ reasoned that the opinions of Drs. Rivera and Gyulai "are also inconsistent with the claimant's activities of daily living, including months of college (although unsuccessful), odd jobs in the community, *365 full-time work as a housekeeper in a vocational rehab program (although in a structured setting), and some care of a younger family member (Exhibit18F/40)." It would seem that an unsuccessful attempt at completing college coursework is weak evidence to contradict treating psychiatrists' opinions that plaintiff's mental impairments render plaintiff unable to adjust to work activity. Moreover, the ALJ's assertion that plaintiff provided "some care of a younger family member" appears to be taken out of context. The medical record to which the ALJ cites in support of this conclusion consists of a cardiologist's treatment note dated December 17, 2013, when plaintiff sought assessment for recurrent syncope. (R. 1450.) The treatment note indicates that plaintiff experienced a syncopal episode "[i]n September, [when] he was going to the kitchen to get his niece something. He denies any prodrome. His last memory was closing the juice lid and he woke up on the floor. No one has witnessed these events but his niece heard him fall." Id.
It is well-established that "[a]n ALJ may accept some of a medical source's opinions while rejecting other opinions from the same source." Comiskey v. Astrue, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-04 (3d Cir. 2008) ). However, an ALJ may not " 'pick and choose' among the evidence, selecting only that which supports his ultimate conclusions." Middlemas v. Astrue, 2009 WL 578406, at *9 (W.D. Pa. Mar. 5, 2009) (citing Morales, 225 F.3d at 318 (an ALJ may not simply rely on "the pieces of the examination reports that supported [his] determination," while excluding other evidence) ). Moreover, the court is mindful that this court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g) ; Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). This court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr., 806 F.2d at 1190-91. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2012) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). However, the court points out that in considering the above issues on remand, the ALJ will be able to consider the opinion evidence again. If the ALJ again determines to accord the opinion of the treating psychiatrists less than full weight, he must provide an adequate basis for that determination.
V. CONCLUSION
After a careful and thorough review of all of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings are not supported by substantial evidence. Accordingly, the court makes the following:
RECOMMENDATION
AND NOW, this 30th day of January, 2018, upon consideration of plaintiff's Brief and Statement of Issues in Support of Request for Review, defendant's response, and plaintiff's reply, it is respectfully recommended that plaintiff's Request for Review be GRANTED and this case be REMANDED[16] for further proceedings *366 consistent with this Report and Recommendation.
The parties may file objections to the Report and Recommendation. See Loc. R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

Throughout his decision, the ALJ describes the relevant time period as beginning on March 3, 1997, the alleged onset date. See, e.g., R. 1512, 1514-15. At the administrative hearing on October 31, 2016, plaintiff's counsel indicated that the case involved "a closed period from the original date of application, July 2012 to December 16, 2014, which was the date of the allowance on the new application." (R. 1537.) Plaintiff points out in his brief that he is ineligible for SSI benefits prior to July 2012. See Pl.'s Br. at 2-3 n.2.

The Social Security Administration recently promulgated amendments to selected regulations. For example, the regulations governing how the Commissioner determines severity, previously codified at 20 C.F.R. § 416.921 were recodified at 20 C.F.R. § 416.922. For purposes of this opinion, the court will refer to the version of the relevant regulation in effect at the time of the ALJ's decision on March 9, 2017.

At step five of the sequential analysis, where a claimant has only exertional limitations, the Commissioner may use the Medical-Vocational Guidelines (the "Grids") to determine whether other work exists in significant numbers in the national economy. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. However, when a claimant has exertional and nonexertional impairments, the Commissioner may not satisfy its burden at step five by reliance on the Grids alone. See Sykes v. Apfel, 228 F.3d 259, 270 (3d Cir. 2000). Following the Third Circuit's decision in Sykes, the Social Security Administration issued Acquiescence Ruling 01-1(3), "Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) -Using the Grid Rules as a Framework for Decisionmaking When an Individual's Occupational Base is Eroded by a Nonexertional Limitation-Titles II and XVI of the Social Security Act." See https://www.ssa.gov/OP_Home/rulings/ar/03/AR2001-01-ar-03.html (last visited January 30, 2018). AR 01-1(3) provides in relevant part:
In making a disability determination or decision at step 5 of the sequential evaluation process (or the last step in the sequential evaluation process in continuing disability review claims), we cannot use the grid rules exclusively as a framework for decisionmaking when an individual has a nonexertional limitation(s). Before denying disability benefits at step five when a claimant has a nonexertional limitation(s), we must: (1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim.
AR 01-1(3). The Ruling "does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision."Id.

VE Gumerman classified plaintiff's past work as a sheer operator as heavy work and the work as a handheld crane operator as medium work. (R. 62.) The VE indicated that there were no skills transferable to sedentary work. Id.

The VE stated that such testimony was consistent with the Dictionary of Occupational Titles. (R. 63.) In addition, when asked by plaintiff's attorney whether the hypothetical individual could perform the identified jobs if the hypothetical individual were further limited in that he was "seriously, seriously limited or totally precluded from working because of work stresses and dealing with work stresses for his ability to complete a normal workday or workweek without interruption from psychologically based symptoms." (R. 63-64.) The VE opined that such individual could perform no work under such parameters. (R. 64.) Similarly, the VE opined that such individual could perform no work if he "would be totally precluded in behaving in an emotionally stable manner" or if he could not relate predictably in social situations or demonstrate reliability. Id.

It should be noted that the regulations again were amended with an effective date of March 27, 2017. Nevertheless, the court will refer to the version of the regulations in effect at the time of the ALJ's March 9, 2017 decision.

At the time of the ALJ's June 10, 2014 decision, Listing 12.04 provided that affective disorders are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (version effective February 26, 2014 to December 8, 2014). The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied. Id. The paragraph A criteria entail:
Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following: a. Anhedonia or pervasive loss of interest in almost all activities; or b. Appetite disturbance with change in weight; or c. Sleep disturbance; or d. Psychomotor agitation or retardation; or e. Decreased energy; or f. Feelings of guilt or worthlessness; or g. Difficulty concentrating or thinking; or h. Thoughts of suicide; or i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following: a. Hyperactivity; or b. Pressure of speech; or c. Flight of ideas; or d. Inflated self-esteem; or e. Decreased need for sleep; or f. Easy distractibility; or g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). Id.
The paragraph B criteria are satisfied when a claimant demonstrates mental impairments that result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. The paragraph C criteria entail: a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Id.

At the time of the ALJ's March 9, 2017 decision, Listing 12.04 provided that affective disorders are satisfied when the requirements in both paragraph A and paragraph B are satisfied, or when the requirements in paragraph A and paragraph C are satisfied. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (version effective January 17, 2017 to March 26, 2017). The Listing provides as follows:
A. Medical documentation of the requirements of paragraph 1 or 2:
1. Depressive disorder, characterized by five or more of the following: a. Depressed mood; b. Diminished interest in almost all activities; c. Appetite disturbance with change in weight; d. Sleep disturbance; e. Observable psychomotor agitation or retardation; f. Decreased energy; g. Feelings of guilt or worthlessness; h. Difficulty concentrating or thinking; or i. Thoughts of death or suicide.
2. Bipolar disorder, characterized by three or more of the following: a. Pressured speech; b. Flight of ideas; c. Inflated self-esteem; d. Decreased need for sleep; e. Distractibility; f. Involvement in activities that have a high probability of painful consequences that are not recognized; or g. Increase in goal-directed activity or psychomotor agitation.
AND
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).
OR
C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).
Id.

The listings define this functional area as follows:
This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one-or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.
20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E1 (version effective January 17, 2017 to March 26, 2017).

The listings define this functional area as follows:
This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.
20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E4 (version effective January 17, 2017 to March 26, 2017).

The mental component of the 2017 RFC assessment limited plaintiff to "unskilled tasks that are goal-oriented rather than production-paced; no significant interaction with the general public; no more than occasional interaction with supervisors and co-workers; and requires a stable workplace, defined as involving few if any changes of setting, processes, and tools." (R. 1520.)

Although he primarily focuses on alleged errors pertaining to the mental limitations of the RFC, plaintiff also argues that the record evidence demonstrates that plaintiff is limited to sedentary work which would render him disabled under the Grids. See Pl.'s Br. 17-19. Defendant counters that the ALJ fully accounted for plaintiff's credibly established physical functional limitations by restricting plaintiff to a limited range of light work. See Def.'s Br. at 11-13. Given the court's recommendation that the case be remanded to reassess plaintiff's RFC in light of the functional limitations assessed by the ALJ in the March 2017 decision, the court will not reach this question.

If the ALJ determines that DAA is a medically determinable impairment and that a claimant is disabled considering all of the claimant's medically determinable impairments, the ALJ will apply the sequential evaluation process a second time to determine whether the claimant would continue to be disabled if he stopped using drugs or alcohol. 2013 WL 621536, at *2.

Plaintiff also avers that the January 2015 award of benefits demonstrates that the ALJ improperly concluded that substance use is material to the disability determination. See Pl.'s Br. at 10-11. The court notes that the fact that plaintiff was awarded benefits in a subsequent application does not, in itself, warrant remand or reversal. Cunningham v. Comm'r of Soc. Sec., 507 Fed.Appx. 111, 120 (3d Cir. 2012) (not precedential) (citing Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 652-53 (6th Cir. 2009) ). "Remand or reversal based on the subsequent favorable decision would be appropriate only if that decision was based on new and material evidence that ... [the plaintiff] had good cause for not raising in the prior proceeding." Id.
Additionally, plaintiff contends that the ALJ improperly concluded that plaintiff's mental impairments would improve to the point of nondisability in the absence of substance use. (Pl.'s Br. at 11, 13-15; Pl.'s Reply at 8-9.) SSR 13-2p explains how periods of abstinence are considered when making the materiality determination, especially in the case of a claimant with a co-occurring mental disorder. Id. at *12-13. SSR 13-2p provides in relevant part:
i. Improvement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use. We may find that DAA is not material depending on the extent to which the treatment for the co-occurring mental disorder improves the claimant's signs and symptoms. If the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), we will find that DAA is not material ....
ii. A co-occurring mental disorder may appear to improve because of the structure and support provided in a highly structured treatment setting. As for any mental disorder, we may find that a claimant's co-occurring mental disorder(s) is still disabling even if increased support or a highly structured setting reduce the overt symptoms and signs of the disorder.
iii. Given the foregoing principles, a single hospitalization or other inpatient intervention is not sufficient to establish that DAA is material when there is evidence that a claimant has a disabling co-occurring mental disorder(s). We need evidence from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence. In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder-with or without treatment for DAA-is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention.
Id. at *12-13. Plaintiff contends that the Commissioner's January 2015 determination that plaintiff is disabled is evidence that plaintiff's impairment has not improved to the point of nondisability in the absence of substance use. (Pl.'s Reply at 8-9.)

The ALJ attributed "little weight" to the opinions of Michelle Rivera, M.D., and Dr. Gyulai, staff psychiatrists with the VA Medical Center. (R. 1522.) Dr. Gyulai opined on March 10, 2014, that plaintiff "as major depression when drug free" and on March 7, 2014, Dr. Rivera, inter alia, rated as "poor/none" plaintiff's ability to sustain an ordinary routine without special supervision, work in coordination with or proximity of others being unduly distracted, maintain concentration, and make work-related decisions. See R. 1499, 1505.

"A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing." Podedworny, 745 F.2d at 221. See also 42 U.S.C. § 405(g). Relying on Allen v. Bowen, 881 F.2d 37, 44 (3d Cir. 1989) and Gilliland v. Heckler, 786 F.2d 178, 184 (3d Cir. 1986), plaintiff posits that the court should reverse the decision of the Commissioner and order benefits paid. In Gilliland, the Third Circuit held that "[t]he decision to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." 786 F.2d at 184. Plaintiff asserts that the record in the present case is fully developed and demonstrates that plaintiff's impairments satisfy Listing 12.04. (Pl.'s Br. at 21-23; Pl.'s Reply at 10.) Plaintiff further avers that remand for another hearing would "only extend Mr. Bruce's waiting time to more than 6 years or longer from the date when he should have been found disabled." (Pl.'s Reply at 10.) The administrative record in the present case extensive; it is comprised of 4,472 pages of evidence. However, this court has recommended that the case be remanded to allow for reassessment of the RFC and hypothetical questions. See Zied v. Astrue, 347 Fed.Appx. 862, 865 (3d Cir. 2009) (not precedential) ("In this case, remand was the appropriate course of action because the ALJ did not consider all of the evidence pertaining to Zied's mental health. When an ALJ does not address all of the evidence of record, the appropriate action is to remand for further proceedings, as a District Court has no fact-finding role in reviewing social security disability cases.").